No. 25-1332

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

RYAN BAUGH,

*Plaintiff-Appellant*,

v.

CENTRAL INTELLIGENCE AGENCY,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
No. 2:24-cv-10036 (Susan K. DeClercq, J.)

_____

**BRIEF FOR PLAINTIFF-APPELLANT**
_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ........................................................ iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................ 1

JURISDICTIONAL STATEMENT ................................................. 2

STATEMENT OF ISSUES .......................................................... 2

STATEMENT OF THE CASE...................................................... 2

SUMMARY OF ARGUMENT ...................................................... 3

ARGUMENT ......................................................................... 3

    I.    STANDARD OF REVIEW ......................................... 3

    II.    DISMISSAL FOR FAILURE TO STATE A CLAIM WAS UNWARRANTED........................................................ 4

        A.    TWO AUTHORITIES ARE MISREPRESENTED.......... 4

        B.    THE ORDER'S PURPORTEDLY PRECLUSIVE PROVISION IS NOT PROBATIVE ................................ 7

            1.    Relevant Case Law Is Based on a Rejected Opinion ..................................................... 7

            2.    The Provision Is Boilerplate .................................... 16

        C.    THE COMPARABLE PROVISION IN AGENCY RULES IS ALSO IRRELEVANT.................................... 20

        D.    ALTERNATIVE REMEDIES ARE A RED HERRING.. 23

    III.    THE DISTRICT COURT SHOULD HAVE ALLOWED JURISDICTIONAL DISCOVERY ............................................. 25

i

CONCLUSION ................................................................................................ 28

CERTIFICATE OF COMPLIANCE .............................................................. 29

CERTIFICATE OF SERVICE ......................................................................... 30

ADDENDUM ................................................................................................. 31

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                     **Pages**

*Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1 (D.C. Cir. 1999).... ......... ......... 5, 16

*Akno 1010 Market Street St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624 (6th Cir. 2022) ...... ......... ......... ......... ......... ......... ......... 26

*Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150 (1970) ... ......... 9

*Atl. Richfield Co. v. DOE*, 769 F.2d 771 (D.C. Cir. 1984) ......... ......... ......... 24

*California v. EPA*, 72 F.4th 308 (D.C. Cir. 2023)... ......... ......... ......... ......... 15, 20

*Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)... ......... ......... ......... ......... ......... ......... ......... 21

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979)....... ......... ......... ......... ......... 10

*Clarke v. Mindis Metals, Inc.*, No. 95-5517, 99 F.3d 1138, 1996 U.S. App. LEXIS 27925 (6th Cir. Oct. 24, 1996) ......... ......... ......... ......... ......... 27

*CMS N. Am., Inc. v. De Lorenzo Marble & Tile, Inc.*, 521 F. Supp. 2d 619 (W.D. Mich. 2007) ......... ......... ......... ......... ......... ......... ......... 27

*Estep v. United States*, 327 U.S. 114 (1946).. ......... ......... ......... ......... ......... 10

*Everhart v. Credit Vision, Inc.*, No. 20-670, 2023 U.S. Dist. LEXIS 50109 (S.D. Ohio Mar. 23, 2023)....... ......... ......... ......... ......... ......... ......... 27

*Greene v. McElroy*, 360 U.S. 474 (1959) ...... ......... ......... ......... ......... ......... 11

*Haleem v. DOD*, No. 23-1371, 2024 U.S. Dist. LEXIS 10429 (Jan. 22, 2024) ......... ......... ......... ......... ......... ......... ......... ......... 15

*In re Surface Mining Regulation Litigation*, 627 F.2d 1346 (D.C. Cir. 1980). 8, 21

*Independent Meat Packers Ass'n v. Butz*, 526 F.2d 228 (8th Cir. 1975) ......... 8

*Legal Aid Soc'y of Alameda Cnty. v. Brennan*, 381 F. Supp. 125 (N.D. Cal. 1974) .. .......... ......... ......... .......... ......... ......... .......... ......... ......... 9, 14, 19

*Legal Aid Soc'y of Alameda Cnty. v. Brennan*, 608 F.2d 1319 (9th Cir. 1979) ......... .......... ......... ......... .......... ......... ......... ......... ......... 9

*Lorillard, Inc. v. FDA*, 56 F. Supp. 3d 37.... ......... ......... .......... ......... ......... 6, 7

*Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451 (D.C. Cir. 1965) ......... .......... ......... ......... .......... ......... ......... .......... ......... ......... 8, 10, 14

*Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993)...... ......... .......... ......... ......... 5, 6, 15

*Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986) ......... .......... ......... ......... 5, 7

*Morongo Band of Mission Indians v. FAA*, 161 F.3d 569 (9th Cir. 1998)....... 16

*Moyar v. DOD*, No. 23-5085, 2024 U.S. App. LEXIS 13146 (D.C. Cir. May 31, 2024)....... ......... ......... .......... ......... ......... .......... ......... ......... 15, 20

*Nat'l Ass'n of Gov't Emps. v. White*, 418 F.2d 1126 (D.C. Cir. 1969) ......... 10, 14

*Nat'l Broiler Council, Inc. v. Fed. Labor Relations Council*, 382 F. Supp. 322 (E.D. Va. 1974)....... ......... .......... ......... ......... .......... ......... ......... 9

*PDK Labs. Inc. v. DEA*, 362 F.3d 786 (D.C. Cir. 2004) ... .......... ......... ......... 6

*Romero v. DOD*, 527 F.3d 1324 (Fed. Cir. 2008) ... ......... .......... ......... ......... 15

*Stevens v. Carey*, 483 F.2d 188 (7th Cir. 1973)....... ......... .......... ......... ......... 9

*United States v. Cotton*, 535 U.S. 625 (2002) ......... ......... .......... ......... ......... 26

*Wonders v. Dep't of the Army*, 121 M.S.P.R. 247 (M.S.P.B. June 25, 2014).. 13

*Wonders v. Dep't of the Army*, 659 Fed. App'x 646 (Fed. Cir. 2016) ... ......... 13, 14

iv

*W6 Rest. Grp., Ltd. v. Loeffler*, 140 F.4th 344 (6th Cir. 2025)..... ......... ......... 3, 4

**Statutes and Rules:**

5 U.S.C. § 552...... ......... ......... ........ ......... ........ ......... ......... ........ 3

5 U.S.C. § 552a .... ......... ......... ........ ......... ........ ......... ......... ........ 3

5 U.S.C. § 701 ...... ......... ......... ........ ......... ........ ......... ......... ........ 2

28 U.S.C. § 1331 .. ......... ......... ........ ......... ........ ......... ......... ........ 2

28 U.S.C. § 1361 .. ......... ......... ........ ......... ........ ......... ......... ........ 2

CIA, *AR 1-1: The Central Intelligence Agency and its Regulatory System* ..... 22

CIA, *AR 1-3: The Agency Regulatory System* ......... ......... .................... ......... 22

Exec. Order 12,893 (Jan. 31, 1994) .... ......... ........ ......... .................... ......... 6

*Exec. Order 12,968 (Aug. 2, 1995)... ….... ........ ........ .................... ……...passim

Exec. Order 13,499 (Feb. 5, 2009).................................................................. 17, 18

Exec. Order 13,500 (Feb. 5, 2009).................................................................. 17, 18

Exec. Order 13,504 (Feb. 20, 2009)................................................................ 17, 18

Exec. Order 13,510 (July 1, 2009) .................................................................. 18

Exec. Order 13,511 (Sept. 29, 2009) .............................................................. 18

Exec. Order 13,512 (Sept. 29, 2009) .............................................................. 17, 18

Exec. Order 13,524 (Dec. 16, 2009) ............................................................... 17

Exec. Order 13,525 (Dec. 23, 2009) ............................................................... 18

Exec. Order 13,552 (Aug. 31, 2010)................................................................ 18

Exec. Order 13,561 (Dec. 22, 2010) ................................................. 18

Exec. Order 13,585 (Sept. 30, 2013) ............................................... 18

Exec. Order 13,586 (Oct. 6, 2011) .................................................. 18

Exec. Order 13,591 (Nov. 23, 2011) ............................................... 18

Exec. Order 13,593 (Dec. 13, 2011) ............................................... 18

Exec. Order 13,594 (Dec. 19, 2011) ............................................... 18

Exec. Order 13,596 (Dec. 19, 2011) ........................................... 17, 18

Exec. Order 13,635 (Dec. 27, 2012) ............................................... 18

Exec. Order 13,641 (Apr. 5, 2013) .................................................. 18

Exec. Order 13,643 (May 15, 2013) ................................................ 18

Exec. Order 13,652 (Sept. 30, 2013) ............................................... 18

Exec. Order 13,654 (Nov. 21, 2013) ............................................... 18

Exec. Order 13,655 (Dec. 23, 2013) ............................................... 18

Exec. Order 13,663 (Mar. 20, 2014) ............................................... 18

Exec. Order 13,666 (Apr. 18, 2014) ................................................ 17

Exec. Order 13,669 (June 13, 2014) ............................................... 18

Exec. Order 13,679 (Oct. 10, 2014) ............................................... 18

Exec. Order 13,686 (Dec. 19, 2014) ............................................... 18

Exec. Order 13,697 (June 22, 2015) ............................................... 17

Exec. Order 13,670 (June 14, 2014) ............................................... 18

Exec. Order 13,696 (June 17, 2015) ................................................... 18

Exec. Order 13,700 (July 15, 2015) .................................................... 18

Exec. Order 13,708 (Sept. 30, 2015) .................................................. 18

Exec. Order 13,711 (Nov. 12, 2015) .................................................. 18

Exec. Order 13,715 (Dec. 18, 2015) ................................................... 18

Exec. Order 13,730 (May 20, 2016) ................................................... 18

Exec. Order 13,740 (Sept. 16, 2016) .................................................. 18

Exec. Order 13,753 (Dec. 9, 2016) .................................................... 17

Exec. Order 13,756 (Dec. 27, 2016) ................................................... 18

Exec. Order 13,811 (Sept. 29, 2017) .................................................. 18

Exec. Order 13,819 (Dec. 22, 2017) ................................................... 18

Exec. Order 13,825 (Mar. 1, 2018) .................................................... 18

Exec. Order 13,856 (Dec. 28, 2018) ................................................... 18

Exec. Order 13,866 (Mar. 28, 2019) .................................................. 18

Exec. Order 13,889 (Sept. 27, 2019) .................................................. 18

Exec. Order 13,901 (Dec. 26, 2019) ................................................... 18

Exec. Order 13,915 (Apr. 14, 2020) ................................................... 17

Exec. Order 13,970 (Dec. 31, 2020) ................................................... 18

Exec. Order 14,048 (Sept. 30, 2021) .............................................. 17, 18

Exec. Order 14,061 (Dec. 22, 2021) ................................................... 18

Exec. Order 14,062 (Jan. 26, 2022) .................................................... 18

Exec. Order 14,077 (July 15, 2022) .................................................... 18

Exec. Order 14,090 (Dec. 23, 2022) .................................................. 18

Exec. Order 14,103 (July 28, 2023) .................................................... 18

Exec. Order 14,113 (Dec. 21, 2023) .................................................. 18

Exec. Order 14,125 (July 24, 2024) .................................................... 18

Exec. Order 14,128 (Nov. 21, 2024) .................................................. 18

Exec. Order 14,130 (Dec. 20, 2024) .................................................. 18

Exec. Order 14,132 (Dec. 23, 2024) .................................................. 18

Exec. Order 14,349 (Sept. 16, 2025) ................................................. 18

Exec. Order 14,368 (Dec. 18, 2025) .................................................. 18

Exec. Order 14,374 (Jan. 14, 2026) ... .......... ........ ........ ........ ......... ........ 18

ODNI, *Intelligence Community Directive 704: Personnel Security
Standards and Procedures Governing Eligibility for Access to
Sensitive Compartmented Information* (Oct. 1, 2008) ....... ......... ......... 21, 22

## <u>ORAL ARGUMENT STATEMENT</u>

Appellant maintains that oral argument would be helpful because this case involves the arcane security clearance appeal process, an area in which Appellant's undersigned counsel is a subject-matter expert who litigates and teaches the material. As noted in this Brief, this case has already seen misrepresentations and misunderstandings about how the process works, and Baugh is concerned that the Court may be deprived of informed analysis if it relies solely on written submissions.

## JURISDICTIONAL STATEMENT

Appellant Ryan Baugh ("Baugh") invoked the District Court's jurisdiction against the Central Intelligence Agency ("CIA") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and 28 U.S.C. § 1331. Complaint, R. 1, Page ID # 1.

On 13 February 2025, the Honorable Susan K. DeClerq ("the District Court") issued a Final Order dismissing the case. Opinion, R. 34, Page ID # 268. Baugh noticed an appeal against CIA on 4 April 2025. Notice of Appeal, R. 36, Page ID # 270.

## STATEMENT OF ISSUES

1.    Whether the District Court erred as a matter of fact and law in finding that Baugh could not establish that he had a legal right to receive a copy of his investigative file?

2.    Whether the District Court erred as a matter of law in denying Baugh's request for jurisdictional discovery?

## STATEMENT OF THE CASE

Baugh brought this case to compel Defendant Central Intelligence Agency ("CIA") to comply with Section 5.2 of Executive Order 12,968 ("E.O. 12,968" or "the Order"), Intelligence Community Policy Guidance 704.3 ("ICPG 704.3"), and Agency Regulation 7-7 ("AR 7-7") and release to him all information relevant to

the adjudication of his security clearance applications, to the extent that it is releasable under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a (collectively "FOIA/PA"). Complaint, R. 1, Page ID # 11. The District Court erred by finding that Baugh could not establish that he had a legal right to receive a copy of his investigative file. Opinion, R. 34, Page ID ## 262-266. The District Court further erred by holding that Baugh's request for jurisdictional discovery was moot because he allegedly failed to state a claim. Opinion, R. 34, Page ID # 258.

## SUMMARY OF ARGUMENT

The District Court erred by dismissing this case for failure to state a claim, based largely on its determination that the Government's statements that the authorities cited by Baugh were unreviewable were determinative. The District Court also erred by concluding that Baugh could have pursued alternative adequate remedies. The District Court also erred by adjudicating CIA's motion to dismiss before assuring itself of its subject-matter jurisdiction.

## ARGUMENT

Baugh seeks a reversal of the District Court's rulings identified above.

## I.    STANDARD OF REVIEW

The Court reviews the District Court's decision on a motion to dismiss *de novo*. *W6 Rest. Grp., Ltd. v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025). The

3

Court reviews the District Court's denial of jurisdictional discovery under the abuse-of-discretion standard. *Id*.

## II.   DISMISSAL FOR FAILURE TO STATE A CLAIM WAS UNWARRANTED

The District Court based its entire ruling on one contention: that E.O. 12,968, ICPG 704.3, and AR 7-7 all "specifically state that they are intended solely for internal management and do not create any enforceable rights." Opinion, R. 34, Page ID ## 262-263. The District Court's conclusion that the Government's mere statement purporting to preclude judicial review compels dismissal is both legally and factually incorrect.

### A.   TWO AUTHORITIES ARE MISREPRESENTED

In addition to being legally dubious for the reasons demonstrated below, the District Court's statement above is in fact demonstrably false for two out of the three authorities cited. Baugh admits—as he must—that E.O. 12,968 contains both the statement that it "is intended only to improve the internal management of the executive branch" and the statement that it does not "create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other persons." Exec. Order 12,968 § 7.2(e). However, of the three authorities cited by Baugh, this is the only one which satisfies both criteria. ICPG 704.3 states that it

4

does not create or confer any rights, but it includes no mention of "internal management." ICPG 704.3, R. 10-2, Page ID # 74. AR 7-7 follows the same pattern, disclaiming the creation of rights while remaining silent about the alleged intention behind the rule. AR 7-7, R. 10-3, Page ID # 91.[1] This Court could issue a decision in Baugh's favor on this fact alone, as at least one court has before it.

In 1999, the D.C. Circuit decided a case substantially in line with this Court's holding in *Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986)—the case principally cited by the District Court to support its reasoning. In that case, the D.C. Circuit held: "Section 7 of the Order [in question] (not reproduced in petitioner's brief) provides that it is 'intended only to improve the internal management of the executive branch and does not create any right . . . enforceable against the United States.' As such, this Executive Order is not subject to judicial review." *Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8 (D.C. Cir. 1999) [hereinafter *Air Transp. Ass'n*] (citing *Meyer v. Bush*, 981 F.2d 1288, 1296 n.8

---

[1] To be clear, Baugh does not intend to suggest that the District Court intentionally misrepresented these authorities. CIA discussed the Order in detail for three pages and then summarily addressed the agency rules in one sentence: "Baugh's attempt to state a claim for alleged violations of ICPG 704.3 and AR 7-7 suffers the same flaw as his attempt to state a claim for violation of Executive Order 12,968 because they also specifically state that they are intended solely for internal management and do not create any enforceable rights." Memo to Dismiss, R. 10, Page ID # 64. The District Court likely took CIA at its word when it quoted this line directly in its Opinion. Opinion, R. 34, Page ID # 263. The blame for this misrepresentation falls squarely at CIA's feet, not the District Court's.

(D.C. Cir. 1993)). However, when the Food and Drug Administration ("FDA")
attempted to rely on this case fifteen years later to avoid judicial review of its
compliance with a regulation, Judge Richard Leon of the D.C. District Court flatly
rejected that argument:

> Put simply, I am not persuaded either that the provision's text
> overcomes the "strong presumption" in favor of reviewability of
> agency action under the APA, *see PDK Labs. Inc. v. DEA*, 362 F.3d
> 786, 792 (D.C. Cir. 2004), or that the cited Circuit precedent is
> controlling here. First, § 2635.106(c) is not itself a judicial review
> provision, unlike the provision of the E.O. at issue in Air Transport[]
> Association, which is titled "Judicial Review." *See* E.O. 12893 (Jan.
> 31, 1994); *PDK Labs. Inc.*, 362 F.3d at 792-93. Second, unlike the
> language of the provision of the E.O. at issue in Air Transport[]
> Association—which provides, "*This order is intended only to improve
> the internal management of the executive branch* and does not create
> any right or benefit, substantive or procedural, enforceable by a party
> against the United States, its agencies or instrumentalities, its officers
> or employees, or any other person," E.O. 12893 (emphasis added)—
> there is no such limiting language of intent in § 2635.106(c). . . .
> Accordingly, as I found at the motion to dismiss stage, I again find that
> plaintiffs' conflicts of interest claims are indeed subject to judicial
> review under the APA.

*Lorillard, Inc. v. FDA*, 56 F. Supp. 3d 37, 50-51 (D.D.C. 2014) (some citations
omitted) (contrasting case with *Air Transport Association* and *Meyer*).

While *Air Transport Association* and *Meyer* are both problematic in other
ways (which will be discussed in greater detail below), this Court need not even
consider those issues when evaluating the question of whether Baugh can judicially
enforce his rights under either ICPG 704.3 or AR 7-7, for the same reason relied
upon by Judge Leon in *Lorillard*: "there is no such limiting language of intent." *Id.*

6

at 50. While Baugh concedes that, unlike the rule at issue in *Lorillard*, these rules do admittedly mention judicial review, he maintains that, as discussed below, an agency cannot fully and unilaterally exempt itself from APA review by talismanically stating "this rule is not subject to judicial review," especially when they have not been promulgated subject to notice and comment. Therefore, Baugh asks this Court to conclude that, even without considering the weighty question of whether he can vindicate his rights under E.O. 12,968, he can assuredly vindicate them under ICPG 704.3 and AR 7-7. In the final analysis, he need only demonstrate that he can enforce his rights under *any* of the cited authorities to prevail in this case.

**B.    THE ORDER'S PURPORTEDLY PRECLUSIVE PROVISION IS NOT PROBATIVE**

To accept the District Court's conclusion regarding E.O. 12,968, the Court must accept that the President can completely preclude judicial review of an agency's compliance with an Executive Order simply by unilaterally inserting language stating that it is for "internal management of the executive branch" and that it "does not . . . create any right." Opinion, R. 34, Page ID # 263.

**1.    Relevant Case Law Is Based on a Rejected Opinion**

Virtually all of the cases CIA cited before the District Court—including the only one from this Circuit—rely on the flawed analysis from one 1965 case which has since been rejected. In CIA's key case, *Michigan v. Thomas*, this Circuit held

7

simply that an executive order which "was intended 'to improve the internal management of the Federal government' and not to confer rights judicially enforceable in private litigation" was not subject to judicial review. 805 F.2d at 187. The Circuit's discussion was three sentences long and cited one case: *In re Surface Mining Regulation Litigation*, 627 F.2d 1346 (D.C. Cir. 1980). In that case, the D.C. Circuit based its holding on two other cases, stating, "This court has also declared that executive orders without specific foundation in congressional action are not judicially enforceable in private civil suits." *Id.* at 1357 (citing *Independent Meat Packers Ass'n v. Butz*, 526 F.2d 228, 236 (8th Cir. 1975), and *Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451, 456-57 (D.C. Cir. 1965)). *Independent Meat Packers Association*, for its part, relied on *Gronouski* as well, and that is where this line of argument begins to unravel. 526 F.2d at 236.

*Gronouski* has already been distinguished from cases of this type several times, and the language used before is just as applicable here. For example, the Northern District of California rejected a comparable argument thusly: "[T]he authorities relied upon by defendants, for example, . . . *Gronouski*, . . . involve executive orders which essentially deal with 'housekeeping' functions strictly within the purview of the executive department. . . . The history of Executive Order 11246 and its basis in the constitutional and statutory provisions noted above make *Gronouski* wholly distinguishable from this action." *Legal Aid Soc'y of*

*Alameda Cnty. v. Brennan*, 381 F. Supp. 125, 130 (N.D. Cal. 1974) [hereinafter

*Legal Aid Soc'y I*] (holding that "executive orders clearly carry the force and effect

of law if they are issued pursuant to constitutional *or* statutory authority"

(emphasis added)), *aff'd* 608 F.2d 1319 (9th Cir. 1979) [hereinafter *Legal Aid*

*Soc'y II*]. The Eastern District of Virginia contemporaneously held:

> Related to the argument on nonreviewability is the position of the
> defendants that because Executive Order 11491 (as amended by
> Executive Orders 11616 and 11636) does not itself provide for judicial
> review, none can be had, citing *Stevens v. Carey*, 483 F.2d 188 (7th Cir.
> 1973), and . . . *Gronouski* . . . . Neither of those cases involved the
> Administrative Procedure Act or agency decision of the type here
> sought to be reviewed. Given the presumption in favor of reviewability,
> see *Association of Data Processing Service Organizations v. Camp*,
> 397 U.S. 150 . . . (1970), . . . the Court concludes that the decision here
> is reviewable under the Administrative Procedure Act.

*Nat'l Broiler Council, Inc. v. Fed. Labor Relations Council*, 382 F. Supp. 322, 325

(E.D. Va. 1974).

The District Court attempted to distinguish *Legal Aid Society* and *National*

*Broiler Council* by merely stating that the relevant executive orders in those cases

"do not contain such language and so are inapposite," Opinion, R. 34, Page ID ##

263-264, but this misses the point. Baugh concedes that the executive orders in

those cases did not explicitly purport to preclude judicial review, but those

decisions remain on point because they explain the narrow scope of such "internal

management" executive orders discussed by *Gronouski* and how they must be

narrowly construed in light of the presumption in favor of reviewability.

Most relevant—and notably absent from the District Court's discussion—is the fact that the D.C. Circuit itself contemporaneously cabined the scope of *Gronouski*, making it inapplicable to this case:

> Appellees rely primarily on . . . *Gronouski* . . . . In that case, where review was denied of a Cabinet officer's construction of Executive Order 10988, the opinion expressly pointed out that there was no claim of denial of constitutional rights. . . .
>
> We recognize that the federal government employee's right to organize is set forth in Executive Order 10988, and that implementation of this directive is essentially a matter of executive determination. But even where a privilege that has been extended is capable of unilateral revocation, the administration of that privilege cannot be exercised in a manner which clashes with basic constitutional safeguards. Judicial relief is available even when the privilege is not rooted in a statute.

*Nat'l Ass'n of Gov't Emps. v. White*, 418 F.2d 1126, 1129-30 (D.C. Cir. 1969) [hereinafter *NAGE*].[2] In other words, an executive order implicates the underlying purpose of the APA if denying judicial review would constitute a deprivation of constitutional rights, so that through the APA an aggrieved party may sue an agency for violating a law that itself carries no private right of action. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316-18 (1979) (finding government violations of Trade Secrets Act reviewable even where Act contained no private right of action).

---

[2] The portion of *Gronouski* to which the D.C. Circuit referred was a footnote observing that it was "not a case where judicial review is required by the Constitution." 350 F.2d at 456 n.9 (citing *Estep v. United States*, 327 U.S. 114, 120 (1946)).

In this respect, the question becomes not whether E.O. 12,968 *did* remove any judicial enforcement, but whether it *could* remove any judicial enforcement. Baugh does not dispute that President Clinton *intended* to preclude any judicial review of an agency's non-compliance with the Order, but he maintains that President Clinton *lacked the authority to do so* because the purpose of E.O. 12,968 was to put in place a degree of due process which had previously been held to be constitutionally required for adverse security clearance determinations. In order to explain this analysis, it is first necessary to summarize the evolution of the security clearance appeal process.

The Defense Office of Hearings and Appeals, which adjudicates appeals of most Department of Defense adverse security clearance determinations, explains the origin of this due process thusly:

> The Supreme Court held [in *Greene v. McElroy*, 360 U.S. 474 (1959),] that the then-existing security clearance process, which provided no opportunity for the cross-examination of witnesses was unacceptable because neither a Congressional statute nor an Executive Order from the President had authorized the program, nor were there discernable standards for denials or revocations.

> In response to *Greene*, President Eisenhower signed Executive Order 10865 on February 20, 1960. Executive Order 10865 specifically addressed the procedural protections for individuals that the Supreme Court had found lacking in "a hearing which failed to comport with our traditional ideas of fair procedure." Executive Order 10865 requires a hearing in which contractor employees are given the opportunity to appear before the decision-maker to confront and cross-examine witnesses and attempt to rebut the Government's case.

11

\*\*\*

> Contractor employees applying for, or seeking to retain, security clearances have received the procedural protections provided by Executive Order 10865 since 1960.

Defense Office of Hearings & Appeals, *Overview of DOHA's Industrial Security Mission*, *at* https://doha.ogc.osd.mil/Industrial-Security-Program/Overview-of-DOHAs-Industrial-Security-Mission/ (last accessed Feb. 18, 2026) [hereinafter *DOHA Overview*].

While Executive Order 10,865 only initially applied to government contractors, a roughly parallel process was later applied to government employees, most recently memorialized in E.O. 12,968. *See* Exec. Order 12,968 § 7.2(c) ("No prior Executive orders are repealed by this order. To the extent that this order is inconsistent with any provision of any prior Executive order, this order shall control, except that this order shall not diminish or otherwise affect the . . . denial and revocation procedures provided to individuals covered by Executive Order No. 10865, as amended."). It is therefore safe to say that, as a direct successor to Executive Order 10,865, E.O. 12,968 was also signed "[i]n response to *Greene* . . . [to] specifically address[] the procedural protections for individuals that the Supreme Court had found lacking." *DOHA Overview*.

At this point, the question becomes, what exactly is the purpose of Sec. 5.2(a), and what harm does a violation create? There are actually two related duties

imposed by this section, in subsections 5.2(a)(2) and (a)(3). The former requires that an individual denied a clearance be "provided within 30 days, upon request and to the extent the documents would be provided if requested under [FOIA/PA], as applicable, any documents, records, and reports upon which a denial or revocation is based." E.O. 12,968 § 5.2(a)(2). The latter requires that the individual also be "informed of their right to . . . request the entire investigative file, as permitted by the national security and other applicable law, which, if requested, shall be promptly provided prior to the time set for a written reply." *Id.* § 5.2(a)(3). And while case law on this particular issue is extremely sparse, the Merit Systems Protection Board ("MSPB") has held that because "agencies must also comply with the procedures set forth in their own regulations" when adjudicating clearance decisions, "[t]he Board may also review whether the agency complied with its own procedures for taking an adverse action based on a security clearance revocation." *Wonders v. Dep't of the Army*, 121 M.S.P.R. 247 (M.S.P.B. June 25, 2014). In that case, the MSPB held that the Department of Defense's failure to adhere to Sec. 5.2(a) and release the relevant records to an individual constituted potentially harmful error. *Id.*

After that case was remanded, the MSPB ultimately held that it constituted harmless error, primarily because the individual had ultimately been given the records before the appeals process was complete. *See Wonders v. Dep't of the*

*Army*, 659 Fed. App'x 646, 647-48 (Fed. Cir. 2016). However, for the purposes of the instant case, the Court should be guided by the Federal Circuit's parting statement that the outcome was only justified "once the procedural violations had been cured by furnishing the evidence." *Id.* at 649. In other words, absent CIA "furnishing the evidence," any future decision regarding Baugh's clearance will be irreparably tainted, which makes the violation a clear due process issue.[3]

As a result, this case squarely falls within the exception to *Gronouski* contemporaneously recognized by the D.C. Circuit in *NAGE*, since E.O. 12,968 cannot be fairly described as "essentially deal[ing] with 'housekeeping' functions" as described by *Legal Aid Society I*. 381 F. Supp. at 130. Instead, it is a rule establishing a system of *constitutionally mandated due process*, such that an agency's refusal to comply with the provisions set forth therein constitutes "a case where judicial review is required by the Constitution." *Gronouski*, 350 F.2d at 456 n.9. *Accord NAGE*, 418 F.2d at 1130 ("But even where a privilege that has been extended is capable of unilateral revocation, the administration of that privilege cannot be exercised in a manner which clashes with basic constitutional

---

[3] Regarding CIA's argument that *Romero* stands for the principle that E.O. 12,968 is unreviewable, Memo to Dismiss, R. 10, Page ID # 63, the Federal Circuit cited *Romero* in *Wonders* for the principle that agency regulations provide procedural protections. *Wonders*, 659 Fed. App'x at 648. This will be addressed below.

safeguards. Judicial relief is available even when the privilege is not rooted in a statute.").

As noted above, the District Court engaged with none of the above analysis, electing instead to distinguish *Legal Aid Society I* and *National Broiler Council* on the dubious grounds that they pertained to executive orders which lacked anti-judicial review provisions. Opinion, R. 34, Page ID ## 263-264. Baugh maintains that this constituted reversible error and asks the Court to find accordingly.

With respect to the other cases cited by the District Court, Opinion, R. 34, Page ID # 263, Baugh admits that the D.C. Circuit recently held that E.O. 12,968 was not judicially enforceable for largely the same reasons cited by the District Court. *See Moyar v. DOD*, No. 23-5085, 2024 U.S. App. LEXIS 13146, at *7 (D.C. Cir. May 31, 2024).[4] However, Baugh maintains that that opinion is equally flawed, in that it, like CIA, relies primarily on *Meyer*, *California v. EPA*, 72 F.4th 308 (D.C. Cir. 2023), and *Romero v. DOD*, 527 F.3d 1324 (Fed. Cir. 2008). These cases are all fruits of the same poisonous legal tree. *Meyer* relies on *Thomas* and *Independent Meat Packers Association*. 981 F.2d at 1296 n.8. *Romero* relies primarily on *Thomas* and *Air Transport Association*. 527 F.3d at 1330 n.1. *Air*

---

[4] The other cited opinion, *Haleem v. DOD*, No. 23-1371, 2024 U.S. Dist. LEXIS 10429 (Jan. 22, 2024), is substantively indistinguishable from *Moyar*, since the plaintiff in that case made practically identical arguments. It will therefore not be discussed.

15

*Transport Association*, for its part, relies on *Meyer*, 169 F.3d at 8, as does

*California v. EPA*, 72 F.4th at 318. In short, if one researches this issue deeply

enough, it is revealed that most of the reasoning imported by the various courts

either originated with *Gronouski* or came with little to no explanation beyond the

fact that the relevant executive order stated as much, *see*, *e.g.*, *Morongo Band of

Mission Indians v. FAA*, 161 F.3d 569, 575 (9th Cir. 1998). The Court should

decline to apply *any* of these decisions to this case.

### 2.   The Provision Is Boilerplate

Notwithstanding the above analysis, the question remains, *why* were early

cases like *Legal Aid Society II* and *National Broiler Council* decided differently

than later cases like *Michigan v. Thomas*? The answer lies in the lesson the

Government learned from the early cases. In the 1970s, the Government met with

some success arguing that executive orders were not judicially enforceable unless

they specifically included judicial review provisions or were written to enable a

statute. However, in the middle of the decade, some courts began to question the

breadth of this doctrine, leading to decisions like *Legal Aid Society II.*

As of the late 1970s, very few executive orders purported to explicitly

preclude judicial review or reference "internal management." This is why, as the

District Court noted, the executive orders at issue in *Legal Aid Society I* and

*National Broiler Council* did not include such language. Opinion, R. 34, Page ID

## 263-264. Those executive orders did not include comparable language because *most* executive orders of the time did not include comparable language.

That began to change when the Government began to respond to decisions like *Legal Aid Society II.* The legal theory apparent in the drafting of new executive orders was that a President could unilaterally preclude judicial review by explicitly stating that an executive order was only intended for "internal management," did not create any rights or privileges, and was not judicially enforceable. Therefore, by the time *Michigan v. Thomas* was being argued, this type of language was becoming more commonplace, and the trend continued.

To demonstrate the pervasive nature of this practice, the undersigned performed a review of all executive orders signed by Presidents Obama, Trump, and Biden, using the database at the American Presidency Project at the University of California-Santa Barbara, https://www.presidency.ucsb.edu/. Of the 898 executive orders signed by these three Presidents, *only 61 did not include some version of this language*. Those 61 executive orders fell into seven lightly overlapping categories, easily explaining why such language was not deemed necessary: (1) Amendments of previous executive orders;[5] (2) Establishing a

---

[5] Exec. Order 13,499 (Feb. 5, 2009); Exec. Order 13,500 (Feb. 5, 2009); Exec. Order 13,504 (Feb. 20, 2009); Exec. Order 13,512 (Sept. 29, 2009); Exec. Order 13,524 (Dec. 16, 2009); Exec. Order 13,596 (Dec. 19, 2011); Exec. Order 13,666 (Apr. 18, 2014); Exec. Order 13,697 (June 22, 2015); Exec. Order 13,753 (Dec. 9, 2016); Exec. Order 13,915 (Apr. 14, 2020); Exec. Order 14,048 (Sept. 30, 2021).

council or committee;[6] (3) Extending a previously established deadline;[7] (4) Continuation of Federal Advisory Committee Act committees;[8] (5) Pay adjustments;[9] (6) Changes to court-martial rules;[10] and (7) A waiver of sections of the Trade Act of 1974 with respect to the Republic of Belarus.[11]

In order for this Court to conclude that the Government's purported preclusion of judicial review for the remaining 93% of executive orders signed by

---

[6] Exec. Order 13,499 (Feb. 5, 2009); Exec. Order 13,500 (Feb. 5, 2009); Exec. Order 13,586 (Oct. 6, 2011); Exec. Order 13,596 (Dec. 19, 2011); Exec. Order 13,654 (Nov. 21, 2013); Exec. Order 13,663 (Mar. 20, 2014); Exec. Order 13,670 (June 14, 2014); Exec. Order 13,679 (Oct. 10, 2014); Exec. Order 13,700 (July 15, 2015); Exec. Order 13,711 (Nov. 12, 2015); Exec. Order 14,077 (July 15, 2022); Exec. Order 14,125 (July 24, 2024); Exec. Order 14,128 (Nov. 21, 2024); Exec. Order 14,349 (Sept. 16, 2025); Exec. Order 14,374 (Jan. 14, 2026).

[7] Exec. Order 13,504 (Feb. 20, 2009); Exec. Order 13,512 (Sept. 29, 2009).

[8] Exec. Order 13,511 (Sept. 29, 2009); Exec. Order 13,585 (Sept. 30, 2013); Exec. Order 13,591 (Nov. 23, 2011); Exec. Order 13,652 (Sept. 30, 2013); Exec. Order 13,708 (Sept. 30, 2015); Exec. Order 13,811 (Sept. 29, 2017); Exec. Order 13,889 (Sept. 27, 2019); Exec. Order 14,048 (Sept. 30, 2021).

[9] Exec. Order 13,525 (Dec. 23, 2009); Exec. Order 13,561 (Dec. 22, 2010); Exec. Order 13,594 (Dec. 19, 2011); Exec. Order 13,635 (Dec. 27, 2012); Exec. Order 13,641 (Apr. 5, 2013); Exec. Order 13,655 (Dec. 23, 2013); Exec. Order 13,686 (Dec. 19, 2014); Exec. Order 13,715 (Dec. 18, 2015); Exec. Order 13,756 (Dec. 27, 2016); Exec. Order 13,819 (Dec. 22, 2017); Exec. Order 13,856 (Dec. 28, 2018); Exec. Order 13,866 (Mar. 28, 2019); Exec. Order 13,901 (Dec. 26, 2019); Exec. Order 13,970 (Dec. 31, 2020); Exec. Order 14,061 (Dec. 22, 2021); Exec. Order 14,090 (Dec. 23, 2022); Exec. Order 14,113 (Dec. 21, 2023); Exec. Order 14,132 (Dec. 23, 2024); Exec. Order 14,368 (Dec. 18, 2025).

[10] Exec. Order 13,552 (Aug. 31, 2010); Exec. Order 13,593 (Dec. 13, 2011); Exec. Order 13,643 (May 15, 2013); Exec. Order 13,669 (June 13, 2014); Exec. Order 13,696 (June 17, 2015); Exec. Order 13,730 (May 20, 2016); Exec. Order 13,740 (Sept. 16, 2016); Exec. Order 13,825 (Mar. 1, 2018); Exec. Order 14,062 (Jan. 26, 2022); Exec. Order 14,103 (July 28, 2023); Exec. Order 14,130 (Dec. 20, 2024).

[11] Exec. Order 13,510 (July 1, 2009).

these three Presidents was made in good faith, it must not only accept without question that *all 837 executive orders* "essentially deal with 'housekeeping' functions strictly within the purview of the executive department," *Legal Aid Soc'y I*, 381 F. Supp. at 130, but also that *not a single one* was "issued pursuant to constitutional or statutory authority." *Id.*

While Baugh recognizes that this case directly pertains to a single executive order signed before all of the ones surveyed herein, he includes this discussion to indicate what CIA is actually arguing in this case. According to CIA, not a single one of the executive orders signed by the last three Presidents is enforceable in court. It does not matter what the orders do or what interests they affect. It does not matter if they are written under statutory authority or not. All that matters is that the President who signed each order said he did not want judicial review, and with those magic words he unilaterally made *all of his orders* unenforceable. A decision in CIA's favor in this case will be cited from this point forward to drive this point home every time someone arbitrarily and capriciously denied a right by an agency tries to make the agency comply with the President's direct orders.

*Michigan v. Thomas* and comparable cases were decided when Presidents wrote executive orders conscientiously and did not tack boilerplate language about judicial review and "internal management" onto the end of practically every order they signed. That time has passed, and this Court should recognize that, to the

19

extent the previous case law controls—which, to be clear, Baugh maintains it does not—it must be reversed in light of the Government's pervasive abuse of the system.

## C.  THE COMPARABLE PROVISION IN AGENCY RULES IS ALSO IRRELEVANT

As noted above, CIA's argument before the District Court regarding the unreviewability of ICPG 704.3 and AR 7-7 totaled *one sentence*, Memo to Dismiss, R. 10, Page ID # 64, prompting the District Court to simply quote CIA's line directly in its Opinion and move on. Opinion, R. 34, Page ID # 263. However, the fact that one is an executive order and the other two are agency rules is fatal to CIA's argument, for the same reason that the D.C. Circuit rejected it in *Moyar*: "We do not prejudge the question whether this 'right' [to request records] extends to the decisions under review or, if it does, whether it is enforceable through the APA or mandamus. But because the district court failed to address that question, we hold that its futility analysis was incomplete, and its decision to dismiss the complaint with prejudice was premature." 2024 U.S. App. LEXIS at *10-11.

The reason for the D.C. Circuit's caution was obvious. As *California v. EPA* stated, the reason that "management" executive orders are not judicially enforceable is "because an executive order is not 'law' within the meaning of the Constitution or the APA." 72 F.4th at 318. This is because, as the D.C. Circuit had previously held, "executive orders *without specific foundation in congressional*

*action*" are not reviewable. *In re Surface Mining Regulation Litigation*, 627 F.2d at 1357 (emphasis added). However, both ICPG 704.3 and AR 7-7 cite specific statutory authority *before any executive orders*, placing them distinctly outside this category. *See* ICPG 704.3, R. 10-2, Page ID # 73; AR 7-7, R. 10-3, Page ID # 78. Even if the Court disagrees with Baugh's analysis above regarding executive orders with a constitutional basis, it is universally well-established that agency regulations *with* a foundation in congressional action are reviewable, regardless of how the agency might wordsmith a disclaimer to the contrary. "To be sure, if Congress precluded non-statutory judicial review, . . . that would be another matter. But we have never held that a lack of a statutory cause of action is *per se* a bar to judicial review." *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1338 (D.C. Cir. 1996) (collecting cases).

In anticipation of CIA's argument that ICPG 704-3 and AR 7-7 are merely non-binding "guidance" documents, *see* Opinion, R. 34, Page ID # 263 (referring to "Executive Order 12,968 [and] its related guidance"), and therefore unenforceable, Baugh will briefly explain how that is not the case. With respect to ICPG 704-3, this document merely *explains* what is meant by Intelligence Community Directive 704, which explicitly incorporates it by reference. ODNI, *Intelligence Community Directive 704: Personnel Security Standards and Procedures Governing Eligibility for Access to Sensitive Compartmented*

*Information* § D(6) (Oct. 1, 2008) ("This ICD *and its associated Intelligence Community Policy Guidance (ICPG)* promulgate the personnel security policy of the DNI.") (emphasis added), *available at* https://www.intel.gov/component/content/article/icd-704-personnel-security (last accessed Feb. 18, 2026).

Similarly, CIA regulations clearly indicate the binding nature of AR 7-7. *See* CIA, *AR 1-1: The Central Intelligence Agency and its Regulatory System* § II(C) ("The Agency Regulatory System shall consist of a structure of foundational and subordinate regulatory issuances, an electronic repository for all Agency regulatory issuances, and a coordination and approval process for promulgating regulatory issuances, as set forth in AR 1-3 (U) *The Agency Regulatory System*."), *available at* https://perma.cc/57S3-JHCZ (last accessed Feb. 18, 2026); CIA, *AR 1-3: The Agency Regulatory System* § II(B) ("Agency Regulations (ARs) should address Agency-wide authorities, policy, and responsibilities (they describe the 'what' and the 'why', i.e., the purpose of the issuance and the reason why it is necessary) such as duties described by statutes and Executive Orders."), *available at* https://perma.cc/7YDC-TXN5 (last accessed Feb. 18, 2026). Any argument that any of these rules are non-binding "guidance" is meritless.

22

### D.    ALTERNATIVE REMEDIES ARE A RED HERRING

The District Court's final contention regarding the merits of Baugh's case is that he is not entitled to relief because he "has an alternate adequate remedy available, which he was pursuing before he filed this case." Opinion, R. 34, Page ID # 265. The District Court's statement that Baugh's "contention that continuing with the administrative process would be futile is unpersuasive as he provides no explanation of why the issue of the redactions in his file cannot be raised in the administrative review process," Opinion, R. 34, Page ID # 265, was a meritless argument which required the Court to assume significant facts not in evidence and draw inferences in the defendant's favor.

First, it is undisputed that Baugh *did* attempt to administratively challenge the improper redactions, and CIA sent a less redacted version nine months later. Complaint, R. 1, Page ID # 8. When he attempted to challenge the redactions again, CIA ignored it. Complaint, R. 1, Page ID # 9. CIA left it to the Court's imagination what other meaningful appeal Baugh could pursue.

Instead, CIA focused on the fact that Baugh did not raise the redactions in his appeal of the security clearance denial itself. However, it provided the District Court no reason to believe that Baugh *could* raise such an issue, and, as the undersigned advised the District Court, his significant experience in such cases strongly suggests otherwise. Baugh offered, "Should the Court be interested in the

23

likelihood of such an appeal succeeding, the undersigned would be willing to submit extrinsic evidence—in the form of declarations from various security clearance lawyers—describing the CIA appeals process and how unlikely it would be that such an approach would be successful." Opposition to Dismissal, R. 30, Page ID # 234.

"When resort to the agency would in all likelihood be futile, the cause of overall efficiency will not be served by postponing judicial review, and the exhaustion requirement need not be applied." *Atl. Richfield Co. v. DOE*, 769 F.2d 771, 782 & n.78 (D.C. Cir. 1984). More importantly, because CIA had filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Baugh was *unable* to offer evidence demonstrating "why the issue of the redactions in his file cannot be raised in the administrative review process," Opinion, R. 34, Page ID # 265, and so he provided the District Court with all he could legally provide it at that stage of the case. The District Court then drew prohibited inferences in CIA's favor and concluded without explanation that there was no evidence that Baugh could offer to demonstrate the fact that any attempt to raise the absence of information in his security clearance appeal would be guaranteed to be futile. The District Court erred by doing so.

The District Court also faulted Baugh for not attempting to vindicate his rights under FOIA or the Privacy Act, Opinion, R. 34, Page ID ## 265-266, but

this again misses the point. As this Court is no doubt aware, FOIA/PA litigation is a lengthy process. Contrariwise, CIA's security clearance appeal process moves at the pace determined by the agency and is unconcerned with whether or not the applicant has received all of the relevant information. Complaint, R. 1, Page ID # 10 ("Baugh is now being informed that, unless he withdraws his appeal of the denial of his security clearance, he must complete the appeal without having access to the entire investigative file to which he is legally entitled, despite the fact that CIA has directed him, pursuant to its standard practice, to 'rely upon the investigative file provided to you in making any statements in support of your request that the security decision be overturned.' . . . Without relief from this Court, Baugh will be forced to appeal an adverse security clearance decision without full knowledge of the facts behind it."). Because CIA would have required him to complete the security clearance appeal process before he completed any FOIA/PA litigation over the investigative file, "those statutes [do not] offer alternative adequate remedies." Opinion, R. 34, Page ID # 265.

For all the above reasons, this Court should reverse and remand the District Court's opinion.

## III.   THE DISTRICT COURT SHOULD HAVE ALLOWED JURISDICTIONAL DISCOVERY

After CIA refused to confirm or deny that it was the agency which made the adverse security clearance decision in Baugh's case, Memo to Dismiss, R. 10, Page

ID # 55, Baugh requested limited jurisdictional discovery on that point. The
District Court denied that motion in a footnote, stating, "However, because the
Executive Order and relevant guidance pertain to all agencies that are part of the
'intelligence community,' at this stage it does not matter which agency actually
made the decision. Moreover, based on the Court's finding that Baugh's complaint
fails to state a claim, plaintiff's motion will be denied as moot." Opinion, R. 34,
Page ID # 258. This decision was erroneous, and it comes with more significant
consequences for the entire case.

First, as a factual matter, while CIA is part of the Intelligence Community,
AR 7-7 does not apply to the entire Intelligence Community. Thus, to the extent
that the District Court relied on this reason to deny Baugh's motion, it would not
resolve any issues regarding that agency regulation.

Second, by first finding that Baugh's complaint failed to state a claim, the
District Court reversed the order in which such questions are required to be
addressed. "[L]itigants and district courts must assure themselves of subject-matter
jurisdiction at the earliest possible moment." *Akno 1010 Market Street St. Louis
Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022). This is because
"subject-matter jurisdiction, because it involves a court's power to hear a case, can
never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).
Moreover, "[n]ot only *may* a court raise subject-matter jurisdiction *sua sponte*, it

*must.*" *CMS N. Am., Inc. v. De Lorenzo Marble & Tile, Inc.*, 521 F. Supp. 2d 619, 632 (W.D. Mich. 2007) (citing *Clarke v. Mindis Metals, Inc.*, No. 95-5517, 99 F.3d 1138, 1996 U.S. App. LEXIS 27925, at *10 (6th Cir. Oct. 24, 1996)). *See also Everhart v. Credit Vision, Inc.*, No. 20-670, 2023 U.S. Dist. LEXIS 50109, at *6-7 (S.D. Ohio Mar. 23, 2023) ("Additionally, federal courts must be mindful of the limitations on their jurisdiction. Consistent with that, courts must raise *sua sponte* jurisdictional issues (such as standing) when they notice them."). By implying that it might not be the proper party defendant, CIA raised the specter of a possible jurisdictional issue, which immediately triggered the District Court's duty to determine whether subject-matter jurisdiction exists "when [it] notice[d] [it]." *Id.*

If there was a question of whether or not CIA was the proper party defendant, then there was a question of whether the District Court had the power to hear this case. If the District Court could not be certain that it had the power to hear the case, it could not adjudicate any substantive motions filed in the case until it resolved that threshold issue. The fact that this case is now on appeal exacerbates this problem. If this Court cannot ascertain whether CIA is the proper party appellee, it must remand the case to the District Court to either allow jurisdictional discovery to resolve the problem or dismiss the case under Federal Rule of Civil Procedure 12(b)(1). Either way, the District Court's opinion must be vacated as premature.

## **CONCLUSION**

For the foregoing reasons, the District Court's opinion should be reversed

and remanded.

Date:  February 19, 2026

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing filing contains 6,837 words and was

prepared in 14-point Times New Roman font using Microsoft Word 365.


<u>/s/ Kelly B. McClanahan</u>
Kelly B. McClanahan, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of February, 2026, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail on Appellee's counsel of record.

Date: February 19, 2026

Respectfully submitted,


  /s/ Kel McClanahan
Kel McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## **ADDENDUM**

The list of relevant originating court documents is as follows:

- Complaint, R. 1, Page ID ## 1-12

- Memo to Dismiss, R. 10, Page ID ## 43-70

- ICPG 704.3, R. 10-2, Page ID ## 72-75

- AR 7-7, R. 10-3, Page ID ## 76-92

- Opposition to Dismissal, R. 30, Page ID ## 220-235

- Opinion, R. 34, Page ID ## 257-268