No. 25-1332

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

—————————————

RYAN BAUGH,

Plaintiff-Appellant,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant-Appellee.

—————————————

On Appeal from the United States District Court
for the Eastern District of Michigan

—————————————

BRIEF FOR DEFENDANT-APPELLEE

—————————————

> BRETT A. SHUMATE
>   *Assistant Attorney General*
>
> ERIC D. MCARTHUR
>   *Deputy Assistant Attorney General*
>
> JEROME F. GORGON, JR.
>   *United States Attorney*
>
> CHARLES W. SCARBOROUGH
> SONIA CARSON
>   *Attorneys, Appellate Staff*
>   *Civil Division, Room 7241*
>   *U.S. Department of Justice*
>   *950 Pennsylvania Avenue, NW*
>   *Washington, DC 20530*
>   *(202) 616-8209*

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION .................................................................................................1

STATEMENT OF JURISDICTION.....................................................................2

STATEMENT OF THE ISSUE.............................................................................2

STATEMENT OF THE CASE...............................................................................2

      A.    Legal Background ...............................................................................2

          1. Statutory Background.................................................................2

          2. Executive Order 12,968 and Related Guidance ..............................4

      B.    Factual Background.............................................................................8

      C.    Prior Proceedings .............................................................................12

SUMMARY OF ARGUMENT .............................................................................13

STANDARD OF REVIEW ..................................................................................16

ARGUMENT ........................................................................................................16

THE DISTRICT COURT CORRECTLY DISMISSED THE COMPLAINT
FOR FAILURE TO STATE A CLAIM ................................................................16

A.    Executive Order 12,968 and Related Guidance Documents Do Not
       Confer Any Judicially Enforceable Rights.......................................16

B.    Baugh's Remaining Arguments Lack Merit......................................25

C.    The District Court Did Not Abuse Its Discretion by Dismissing the
       Complaint Without "Jurisdictional" Discovery................................30

CONCLUSION......................................................................................................32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## TABLE OF AUTHORITIES

**Cases:**             **Page(s)**

*Allied Chem. Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980) ........................................................................3

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) ................................................. 22, 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................25

*Berry v. U.S. Dep't of Lab.*,
832 F.3d 627 (6th Cir. 2016) .......................................................16

*California v. Environmental Prot. Agency*,
72 F.4th 308 (D.C. Cir. 2023) ............................................ 14, 21, 22

*CareToLive v. Food & Drug Admin.*,
631 F.3d 336 (6th Cir. 2011) .......................................................16

*Carson v. U.S. Off. of Special Couns.*,
633 F.3d 487 (6th Cir. 2011) ................................................. 3, 23

*Central Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*,
643 F.3d 1142 (8th Cir. 2011) .....................................................15

*Chen Zhou Chai v. Carroll*,
48 F.3d 1331 (4th Cir. 1995) .......................................................22

*Courser v. Allard*,
969 F.3d 604 (6th Cir. 2020) .......................................................26

*Department of the Navy v. Egan*,
484 U.S. 518 (1988) ............................................................ 4, 15, 26

*Greene v. McElroy*,
360 U.S. 474 (1959) .....................................................................27

*Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*,
35 F.4th 437 (6th Cir. 2022) .......................................................26

*Heckler v. Ringer*,
    466 U.S. 602 (1984) ................................................................................3

*Helicopter Ass'n Int'l v. Federal Aviation Admin.*,
    722 F.3d 430 (D.C. Cir. 2013) ...............................................................18

*Lorillard, Inc. v. U.S. Food & Drug Admin.*,
    56 F. Supp. 3d 37 (D.D.C. 2014) ..................................................... 29, 30

*Maczko v. Joyce*,
    814 F.2d 308 (6th Cir. 1987) ...................................................................3

*Manhattan-Bronx Postal Union v. Gronouski*,
    350 F.2d 451 (D.C. Cir. 1965) ...............................................................28

*Martinez v. Wayne County*,
    142 F.4th 828 (6th Cir. 2025) ................................................................25

*Meyer v. Bush*,
    981 F.2d 1288 (D.C. Cir. 1993) .............................................................18

*Michigan v. Thomas*,
    805 F.2d 176 (6th Cir. 1986) ........................................................... 13, 17

*Morongo Band of Mission Indians v. Federal Aviation Admin.*,
    161 F.3d 569 (9th Cir. 1998) ........................................................ 13, 18-19

*Moyar v. U.S. Dep't of Def.*,
    No. 23-5085, 2024 WL 2795958 (D.C. Cir. May 31, 2024)........................ 14, 18

*National Mining Ass'n v. United Steel Workers*,
    985 F.3d 1309 (11th Cir. 2021) ..................................................... 13, 19

*Rimmer v. Holder*,
    700 F.3d 246 (6th Cir. 2012) .................................................................15

*R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*,
    810 F.3d 827 (D.C. Cir. 2016) ...............................................................30

*Romero v. Department of Def.*,
    527 F.3d 1324 (Fed. Cir. 2008) ...................................................... 14, 18

iv

*Sur Contra La Contaminación v. Environmental Prot. Agency*,
   202 F.3d 443 (1st Cir. 2000) ............................................................ 13, 18

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) ...............................................................................22

*U.S. Dep't of Health & Hum. Servs. v. Federal Lab. Rels. Auth.*,
   844 F.2d 1087 (4th Cir. 1988)........................................................ 14, 22

*Walsh v. U.S. Dep't of Veterans Affs.*,
   400 F.3d 535 (7th Cir. 2005)..................................................................15

*Webster v. Doe*,
   486 U.S. 592 (1988) .................................................................................3

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ...............................................................................22

**U.S. Constitution:**

Art. II, § 2...................................................................................................4

**Statutes:**

5 U.S.C. § 105...........................................................................................31

5 U.S.C. § 552 .............................................................................. 5, 14, 23

5 U.S.C. § 552a ......................................................................... 5, 14, 23-24

5 U.S.C. § 701(a) ........................................................................................3

5 U.S.C. § 702............................................................................................1, 2

5 U.S.C. § 704 ............................................................................................2

5 U.S.C. § 706(1)-(2) .................................................................................2

28 U.S.C. § 1292(a)(1)...............................................................................2

28 U.S.C. § 1331 .................................................................................. 2, 31

v

28 U.S.C. § 1361 ...................................................................................1, 3

**Regulatory Materials:**

Exec. Order No. 12,291,
46 Fed. Reg. 13,193 (Feb. 19, 1981) ...................................................17

Exec. Order No. 12,968,
60 Fed. Reg. 40,245 (Aug. 7, 1995) ...........1, 4, 5, 6, 13, 14-15, 17, 24, 29, 30, 31

**Rule:**

Fed. R. Civ. P. 12(b)(6).......................................................................31

## STATEMENT REGARDING ORAL ARGUMENT

The government does not request oral argument. If this Court schedules the case for oral argument, the government stands ready to participate.

**INTRODUCTION**

In 2019, the government denied plaintiff Ryan Baugh's security clearance application. The government has provided Baugh with a redacted copy of his investigative file and an opportunity to seek administrative review of the denial. Rather than complete the administrative review process, Baugh sued in federal district court under the Administrative Procedure Act (APA), 5 U.S.C. § 702, and the Mandamus Act, 28 U.S.C. § 1361, seeking an order to require the government to release the redacted information in his investigative file. Baugh alleges that withholding the redacted information violates Executive Order 12,968, 60 Fed. Reg. 40,245 (Aug. 7, 1995), as well as guidance connected to the executive order. All these materials explicitly state that they do not create any private rights subject to administrative or judicial review.

The district court correctly dismissed the complaint for failure to state a claim. This Court and multiple Circuits have repeatedly held that courts may not review an agency's compliance with executive orders or guidance that expressly disavow creating any private rights subject to review. Baugh cannot circumvent this uniform precedent by asserting claims under the APA or the Mandamus Act. Baugh principally asserts that "due process" requires this Court to ignore the plain language of Executive Order 12,968, but it is black-letter law that he has no right

of any kind to a security clearance. His remaining arguments misread the case law and lack merit. The judgment should be affirmed.

## STATEMENT OF JURISDICTION

The district court granted the government's motion to dismiss on February 13, 2025. A timely notice of appeal was filed on April 4, 2025. The district court had jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

Whether the district court erred by dismissing the complaint for failure to state a claim.

## STATEMENT OF THE CASE

### A.    Legal Background

#### 1.  Statutory Background

The APA authorizes, *inter alia*, suit by "[a] person suffering legal wrong because of agency action." 5 U.S.C. § 702. Agency action is subject to judicial review when the action is "made reviewable by statute" or when it is "final agency action for which there is no other adequate remedy in a court." *Id.* § 704. A reviewing court may "hold unlawful and set aside" unlawful "agency action[s], findings, and conclusions" and "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1)-(2). But judicial review is not available when

2

"statutes preclude judicial review" or "agency action is committed to agency discretion by law." *Id.* § 701(a). The Supreme Court has explained that an action is "committed to agency discretion by law" when there are "no substantive standards on which a court could base its review." *Webster v. Doe*, 486 U.S. 592, 599-600 (1988).

The Mandamus Act creates district court jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Supreme Court has explained that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam). "[I]n order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987). "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011) (quotations omitted). Mandamus is not available "if the action that the petitioner seeks to compel is discretionary." *Ibid.* (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

3

## 2. Executive Order 12,968 and Related Guidance

The President has "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position * * * that will give that person access to such information." *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (citing U.S. Const. art. II, § 2). Pursuant to that authority, "Presidents, in a series of Executive Orders, have sought to protect sensitive information and to ensure its proper classification throughout the Executive Branch." *Id.* at 528.

Executive Order 12,968 "establishe[d] a uniform Federal personnel security program for employees who will be considered for initial or continued access to classified information." Exec. Order No. 12,968, 60 Fed. Reg. at 40,245. The order explains that "[t]he national interest requires that certain information be maintained in confidence through a system of classification" and that "unauthorized disclosure of information classified in the national interest can cause irreparable damage to the national security." *Ibid.* Eligibility for access to classified information "is a discretionary security decision based on judgments by appropriately trained adjudicative personnel" and "granted only where facts and circumstances indicate access to classified information is clearly consistent with the national security interests of the United States, and any doubt shall be resolved in favor of the national security." *Id.* § 3.1(b), 60 Fed. Reg. at 40,250.

4

Executive Order 12,968 also sets out a process for internal agency review for "[a]pplicants and employees who are determined to not meet the standards for access to classified information established in * * * this order."  Exec. Order No. 12,968, § 5.2(a), 60 Fed. Reg. at 40,252. This process permits a disappointed applicant to request "any documents, records, and reports upon which [the] denial or revocation is based," which will be disclosed "to the extent the documents would be provided if requested under the Freedom of Information Act [(FOIA)] (5 U.S.C. 552) or the Privacy Act ([5] U.S.C. 552a), as applicable." *Id.* § 5.2(a)(2), 60 Fed. Reg. at 40,252. Applicants may also receive a "comprehensive and detailed * * * written explanation of the basis for [the denial] as the national security interests of the United States and other applicable law permit"; an opportunity to be represented by counsel and "to request the entire investigative file, as permitted by the national security and other applicable law"; "a reasonable opportunity to reply in writing to, and to request a review of, the determination"; "written notice of and [the] reasons for the results of the review, the identity of the deciding authority, and written notice of the right to appeal"; an opportunity to appeal in writing to a panel appointed by the agency head; and "an opportunity to appear personally and to present relevant documents, materials, and information at some point in the process" to an appropriate authority. *Id.* § 5.2(a)(1), (3)-(7), 60 Fed. Reg. at 40,252.

5

The executive order expressly states that it does not create judicially enforceable rights. Section 5.2(c) of the order directs federal agencies to "promulgate regulations to implement" Section 5.2 and clarifies that "[t]his section * * * creates no procedural or substantive rights." Exec. Order No. 12,968, § 5.2(c), 60 Fed. Reg. at 40,252. Section 7.2(e) of the order reiterates that the order is "intended only to improve the internal management of the executive branch" and "is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." *Id.* § 7.2(e), 60 Fed. Reg. at 40,254.

The Office of the Director of National Intelligence issues guidance to the federal agencies or departments that are elements of the intelligence community. This guidance includes Intelligence Community Policy Guidance 704.3 (ICPG 704.3), which addresses security clearance denials and sets out review procedures tracking those in the executive order. Mot. to Dismiss Ex. 1, R. 10-2, Page ID ## 73-74. The guidance explicitly states that it "does not create or confer on any person or entity any right to administrative or judicial review of these procedures, their implementation, or decisions or actions rendered there under," "[n]or does it create or confer any right, benefit, or privilege, whether substantive or procedural,

6

for access to classified national intelligence" or "create or confer any substantive or procedural right, benefit, or privilege enforceable by any party against the United States or any agency, department, or instrumentality of the executive branch, its officers or employees," or "any other person." *Id.*, Page ID ## 74.

Like other members of the intelligence community, the Central Intelligence Agency (CIA) has adopted internal regulations prescribing procedures for review and appeals of decisions regarding eligibility determinations for access to classified information. These include internal Agency Regulation 7-7 (AR 7-7), which explains the process for determining an applicant's suitability for access to classified information and addresses the appeal of personnel security decisions. Mot. to Dismiss Ex. 2, R. 10-3, Page ID ## 77-92. This internal regulation explicitly states its "limitations" include that it "does not create for or confer on any person or entity any right to administrative or judicial review of these procedures, their implementation, or decisions or actions rendered there under," that it "also does not create or confer any right, benefit, or privilege, whether substantive or procedural, for access to classified information or facilities," and that it "does not create or confer any substantive or procedural right, benefit, or privilege enforceable by any party against the U.S., the Agency, or any other agency or instrumentality of the executive branch, its officers or employees, or any other person." AR 7-7(II)(16)(i)(5), R. 10-3, Page ID ## 90-91.

7

### B.    Factual Background

In January 2019, Baugh applied for a Top Secret/Sensitive Compartmented Information (TS/SCI) clearance. Compl. ¶¶ 14-15, R. 1, Page ID ## 5. In July 2019, the government notified Baugh by letter that his application had been denied. Addendum to Mot. to Dismiss, R. 23, Page ID ## 154-155. The letter noted that Baugh had been granted a Secret clearance in February 2011 and explained that the government had denied his application for TS/SCI clearance "based on the Security Executive Agent Directive 4, National Security Adjudicative Guidelines for Drug Involvement and Substance Misuse." Addendum to Mot. to Dismiss Ex. 3, R. 23-1, Page ID ## 155. The letter also contains additional information that, at Baugh's request, the government agreed to file under seal in district court and redacted in the version of the letter available on the public docket. *See* Corrected Order, R. 24, Page ID ## 156.

The government's letter to Baugh included two attachments. One document is a copy of Security Executive Agent Directive 4 Guideline H, which sets forth the National Security Adjudicative Guidelines for Drug Involvement and Substance Abuse. Mot. to Dismiss Ex. 4, R. 10-5, Page ID ## 100-101. Guideline H explains that "[t]he illegal use of controlled substances, to include the misuse of prescription and non-prescription drugs, and the use of other substances that cause physical [and] mental impairment or are used in a manner inconsistent with their intended

8

purpose" may raise disqualifying security concerns "both because such behavior may lead to physical or psychological impairment and because it raises questions about a person's ability or willingness to comply with laws, rules, and regulations." *Id.* ¶ 24, Page ID ## 100. "Conditions that could raise a security concern and may be disqualifying include" "any substance misuse," "testing positive for an illegal drug," "illegal possession of a controlled substance," medical diagnosis of a "substance use disorder," "failure to successfully complete" a duly prescribed drug treatment program, "any illegal drug use while granted access to classified information or holding a sensitive position," and "expressed intent to continue drug involvement and substance misuse, or failure to clearly and convincingly commit to discontinue such misuse." *Id.* ¶ 25, Page ID ## 100.

The second document is a four-page document titled "Security Decision Information and Instructions." Mot. to Dismiss Ex. 4, R. 10-5, Page ID ## 96-99. This document explained in detail how disappointed applicants can request review of the decision and how to request a copy of an investigative file, and that upon request, the government "will send you an unclassified copy of your investigative file consistent with any applicable restrictions under the Privacy Act" or FOIA. *Id.*, Page ID ## 96-97. For convenience, the document also includes a checklist of "Reminders" that applicants may use as an informational reference for steps in the process. *Id.*, Page ID ## 99.

9

In August 2019, Baugh sent a letter via counsel "formally requesting Baugh's investigative file and requesting that Baugh's deadline for submitting an appeal request be tolled until after the file was received." Compl. ¶ 23, R. 1, Page ID ## 6. In September 2019, the government sent Baugh's counsel a letter enclosing the investigative file with redactions. *Id.* ¶ 24, Page ID ## 6; Mot. to Dismiss Ex. 5, R. 10-6, Page ID ## 103. The complaint alleges that the government redacted "Baugh's identifying information, such as his Social Security Number, military service numbers, and a loan number," Compl. ¶ 27, R. 1, Page ID ## 7, and "virtually all of the initial recommendation" of "the [Office of Security] officer[]" and "most of the Senior Case Manager's comments," *id.* ¶¶ 28, 41, Page ID ## 7, 9. It is undisputed that Baugh did not respond to this letter; the complaint asserts that Baugh's counsel has no record of receiving the letter in 2019. *Id.* ¶ 24 n.4, Page ID ## 6 n.4.

On October 11, 2022, a government employee attempted to contact Baugh's attorney about his pending request for review. Compl. ¶ 30, R. 1, Page ID ## 7. She left a voicemail indicating that she was reaching out to schedule a time for Baugh's personal appearance in response to his request for review. *Ibid.* On October 18, 2022, she again attempted to contact Baugh's attorney by leaving a voicemail restating the desire to schedule a personal appearance. *Id.* ¶ 31, Page ID ## 7. On October 19, 2022, Baugh's attorney informed her that he had not received

10

the investigative file. *Id.* ¶ 32, Page ID ## 7-8. She advised that the investigative file "had been sent in September 2019 and agreed to resend it." *Ibid.*

On October 21, 2022, the United States resent the redacted investigative file. Compl. ¶ 33, R. 1, Page ID ## 8. Baugh alleges that between November 2022 and March 2023, his counsel "attempted" several times to contact the government employee by phone to assert that the investigative file had been improperly redacted. *Id.* ¶ 35, Page ID ## 8. In July 2023, the government provided Baugh's counsel with a modified copy of the investigative file that disclosed an additional "six brief paragraphs summarizing information provided by Baugh." *Id.* ¶¶ 39-40, Page ID ## 8-9.

Over the next several months, the government made multiple additional attempts to arrange a time for Baugh's personal appearance. Compl. ¶ 42, R. 1, Page ID ## 9. On December 20, 2023, the government sent a letter to Baugh's counsel stating that "[i]f we do not receive a response within 10 business days, your client's request for a []review [sic] will be cancelled, due to our inability to contact you using the most current information we have." *Id.* ¶ 45, Page ID ## 9 (third alteration in original) (quotations omitted); Mot. to Dismiss Ex. 6, R. 10-7, Page ID ## 105.

11

### C.      Prior Proceedings

On January 5, 2024, Baugh sued in district court. The complaint alleged that the government had violated the APA because it "impermissibly withheld information from the investigative file from Baugh" and requested an injunction or writ of mandamus ordering the government to "immediately provide him with all information in his investigative file to the extent that the information would not be exempt under" FOIA or the Privacy Act. Compl. ¶¶ 52, 56, R. 1, Page ID ## 11. Baugh's suit does not challenge the decision to deny his application for a TS/SCI security clearance.

The district court dismissed the complaint. Op., R. 34, Page ID ## 257-268. The court first explained that Baugh could not state a claim under the APA because "neither Executive Order 12,968 nor its related guidance bestow any private right that Baugh can enforce against the United States or CIA." *Id.*, Page ID ## 263. "Given that Baugh cannot establish that he has any legal right to receive a copy of his investigative file," the court explained, "he has failed to state a judicially reviewable APA claim." *Id.*, Page ID ## 264. The court also rejected the claim for mandamus relief, explaining that "Baugh does not have a right to receive a copy of his investigative file, much less an unredacted one." *Ibid.* "[E]ven if an argument could be made that the CIA has a duty to provide Baugh with his investigative file," the court reasoned, "it is undisputed that he received a copy of the file." *Ibid.*

## SUMMARY OF ARGUMENT

A. 1. Baugh claims that the government violated Executive Order 12,968 by including redactions when it provided him with the investigative file related to the denial of his security clearance. But the executive order "is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." Exec. Order No. 12,968, § 7.2(e), 60 Fed. Reg. at 40,254. Policy guidance and internal agency regulations implementing the executive order repeat that language. ICPG 704.3(D)(5), R. 10-2, Page ID ## 74; AR 7-7(II)(16)(i)(5), R. 10-3, Page ID ## 91. These unequivocal statements foreclose Baugh's claims. This Court has held that such language conveys a "clear and unequivocal intent that agency compliance with" the executive order is "not" "subject to judicial review," *Michigan v. Thomas*, 805 F.2d 176, 187 (6th Cir. 1986), and multiple federal appellate courts agree, *see, e.g.*, *Sur Contra La Contaminación v. Environmental Prot. Agency*, 202 F.3d 443, 450-451 (1st Cir. 2000); *Morongo Band of Mission Indians v. Federal Aviation Admin.*, 161 F.3d 569, 575 (9th Cir. 1998); *National Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 (11th Cir. 2021). Indeed, the D.C. Circuit and the Federal Circuit have reached the same conclusion in the specific context of Executive Order 12,968. *See*

13

*Romero v. Department of Def.*, 527 F.3d 1324, 1330 n.1 (Fed. Cir. 2008); *Moyar v. U.S. Dep't of Def.*, No. 23-5085, 2024 WL 2795958, at *3 (D.C. Cir. May 31, 2024) (per curiam).

2. Baugh cannot avoid the express disclaimer of judicially enforceable rights in Executive Order 12,968 and various agency regulations by recharacterizing his claims as arising under the APA or the Mandamus Act. "Petitioners cannot bootstrap private enforcement of executive orders into arbitrary and capricious review," *California v. Environmental Prot. Agency*, 72 F.4th 308, 318 (D.C. Cir. 2023), and the order and directives are not reviewable under the APA or the Mandamus Act in any event. Executive orders "serve as presidential directives to agency officials to consider certain policies" and "do not create free-standing private rights to enforce such policies because an executive order is not 'law' within the meaning of" the APA. *Ibid.*; *see also U.S. Dep't of Health & Hum. Servs. v. Federal Lab. Rels. Auth.*, 844 F.2d 1087, 1095-1096 (4th Cir. 1988) (en banc). Baugh also cannot show a clear right to relief owed by a respondent with a clear duty to act: the executive order provides that disappointed applicants may receive information "upon which a denial or revocation is based" only "to the extent the documents would be provided if requested under [FOIA] (5 U.S.C. 552) or the Privacy Act ([5] U.S.C. 552a)," Exec. Order No. 12,968, § 5.2(a)(2), 60 Fed.

14

Reg. at 40,252, which involves judgments that require analysis, not mere ministerial action.

3. In any event, it is undisputed that Baugh has received a copy of his investigative file. The complaint alleges that Baugh received his file in October 2022, when the government "resent" the file it had provided to him in September 2021, and that he received his file yet again in July 2023. Compl. ¶¶ 24-29, 32-33, 39-41, R. 1, Page ID ## 6-9. There can be no serious argument that the government has acted contrary to any mandatory duty or directive here. To the extent Baugh believes the government must provide unredacted documents, FOIA and the Privacy Act "clearly provide[] an alternate adequate remedy in court" for the unredacted documents he seeks. *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012); *accord Central Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1148 (8th Cir. 2011); *Walsh v. U.S. Dep't of Veterans Affs.*, 400 F.3d 535, 537-538 (7th Cir. 2005).

B. Baugh's remaining arguments lack merit. Baugh mainly argues (Br. 7-22) that the district court should have ignored the text of the executive order and relevant agency regulations under a variety of theories about "due process." But black-letter law establishes what "should be obvious": "no one has a 'right' to a security clearance." *Department of the Navy v. Egan*, 484 U.S. 518, 528 (1988). Baugh does not cite or acknowledge *Egan*, but this choice does not allow him to

15

evade its force. Because Baugh has no right to be granted a security clearance, he has no constitutionally cognizable interest to which due process procedural requirements could attach. In the alternative, Baugh argues (Br. 4-7 & n.1) that the district court ruled against him because the government committed "misrepresentation." Baugh offers no support for this accusation, much less explains why "this fact alone" (Br. 5) entitles him to an order from this Court giving him access to redacted material.

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's order dismissing a claim for failure to state a claim." *Berry v. U.S. Dep't of Lab.*, 832 F.3d 627, 632 (6th Cir. 2016). A district court's order denying discovery is reviewed for abuse of discretion. *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 344 (6th Cir. 2011).

## ARGUMENT

### THE DISTRICT COURT CORRECTLY DISMISSED THE COMPLAINT FOR FAILURE TO STATE A CLAIM

**A.    Executive Order 12,968 and Related Guidance Documents Do Not Confer Any Judicially Enforceable Rights**

1. The judgment of dismissal was correct and should be affirmed. Baugh claims that he was denied rights that he believes Executive Order 12,968 confers, but Section 7.2(e) of that order expressly states that it "is not intended to, and does not, create any right to administrative or judicial review, or any other right or

16

benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." Exec. Order No. 12,968, § 7.2(e), 60 Fed. Reg. at 40,254. Rather, the executive order "is intended only to improve the internal management of the executive branch." *Ibid.* Section 5.2(c) reinforces the point by contemplating that agency heads will "promulgate regulations to implement" Section 5.2(a) and by specifying that "[t]his section * * * creates no procedural or substantive rights." *Id.* § 5.2(c), 60 Fed. Reg. at 40,252.

The plain language of Executive Order 12,968 forecloses Baugh's claims for the same reasons this Court set out in *Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986). There, this Court considered an executive order stating that "[t]his Order is intended only to improve the internal management of the Federal government, and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers or any person." *Id.* at 187 (alteration in original) (quoting Exec. Order No. 12,291, § 9, 46 Fed. Reg. 13,193, 13,198 (Feb. 19, 1981)). This Court held that such language conveys a "clear and unequivocal intent that agency compliance with" the executive order is "not" "subject to judicial review." *Ibid.* As the district court correctly recognized, Executive Order 12,968 contains materially identical language and

17

thus compels the same conclusion: courts may not review claims that an agency has failed to comply with that order.

Multiple federal appellate courts agree. The D.C. Circuit and the Federal Circuit have reached the same conclusion with respect to Executive Order 12,968 itself, holding that Section 7.2(e) of that order bars any court from reviewing an agency's compliance with the order. *Romero v. Department of Def.*, 527 F.3d 1324, 1330 n.1 (Fed. Cir. 2008); *Moyar v. U.S. Dep't of Def.*, No. 23-5085, 2024 WL 2795958, at *3 (D.C. Cir. May 31, 2024) (per curiam); *see also Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993) (reasoning that an executive order "devoted solely to the internal management of the executive branch—and one which does not create any private rights—is not * * * subject to judicial review"); *accord Helicopter Ass'n Int'l v. Federal Aviation Admin.*, 722 F.3d 430, 439 (D.C. Cir. 2013).

The First, Ninth, and Eleventh Circuits have likewise held that executive orders that expressly disclaim the creation of any right or benefit, substantive or procedural, foreclose judicial review of claims that the agency has not complied with the executive orders. *See Sur Contra La Contaminación v. Environmental Prot. Agency*, 202 F.3d 443, 449-451 (1st Cir. 2000) (explaining that the court "cannot review" agency action alleged to be inconsistent with an executive order containing this language); *Morongo Band of Mission Indians v. Federal Aviation*

18

*Admin.*, 161 F.3d 569, 575 (9th Cir. 1998) (rejecting claims that an agency violated an executive order and an internal agency directive about the order because both "specifically state that they do not create any right to judicial review for alleged noncompliance"); *National Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 (11th Cir. 2021) (rejecting "judicial review of inconsistent agency action" alleged to violate two executive orders because both "state that they do not create any right or benefit, substantive or procedural, enforceable by any party against agencies" (quotations omitted)).

The policy guidance and internal agency regulations implementing Executive Order 12,968 contain similar language disclaiming the creation of any judicially enforceable rights, which underscores that judicial review is not available. For example, Intelligence Community Policy Guidance 704.3 explicitly states that it "does not create or confer on any person or entity any right to administrative or judicial review of these procedures, their implementation, or decisions or actions rendered there under," "[n]or does it create or confer any right, benefit, or privilege, whether substantive or procedural, for access to classified national intelligence" or "create or confer any substantive or procedural right, benefit, or privilege enforceable by any party against the United States or any agency, department, or instrumentality of the executive branch, its officers or employees," or "any other person." ICPG 704.3(D)(5), R. 10-2, Page ID ## 74.

19

The CIA's internal Agency Regulation 7-7 explaining the processes for determining an applicant's suitability for access to classified information and appealing personnel security decisions explicitly states that it "does not create for or confer on any person or entity any right to administrative or judicial review of these procedures, their implementation, or decisions or actions rendered there under," that it "also does not create or confer any right, benefit, or privilege, whether substantive or procedural, for access to classified information or facilities," and that it "does not create or confer any substantive or procedural right, benefit, or privilege enforceable by any party against the U.S., the Agency, or any other agency or instrumentality of the executive branch, its officers or employees, or any other person." AR 7-7(II)(16)(i)(5), R. 10-3, Page ID ## 91. As discussed, this Court has held that such language does not create any entitlement to judicial review when it appears in an executive order; the fact that it is replicated in directives that implement the order does not change its meaning or the ensuing legal consequences. *See supra* pp. 17-18.

2. Baugh largely ignores the express language of Executive Order 12,968 and applicable agency regulations and guidance disavowing the creation of any judicially enforceable rights. He repeatedly asserts that such language is not dispositive, but he makes no attempt to square that argument with decisions by this Court and other circuits holding that such language precludes judicial review of

20

claims arising from the same or similar executive orders. Baugh cannot circumvent the unequivocal language of Executive Order 12,968 by recharacterizing his claims as arising under the APA or the Mandamus Act rather than directly under the executive order. Baugh Br. 11-16, 20-22.

a. "Petitioners cannot bootstrap private enforcement of executive orders into arbitrary and capricious review." *California v. Environmental Prot. Agency*, 72 F.4th 308, 318 (D.C. Cir. 2023). Baugh's substantive arguments here rely exclusively on Executive Order 12,968 and regulations and guidance implementing that order; his theories "implicate no independent statutory requirements." *Ibid.* Baugh points out that the policy guidance and internal agency regulations cite both the executive order and other authorities, Baugh Br. 20-21, but he (correctly) does not argue that any other authority establishes the procedural requirements he seeks to enforce. Because he seeks "no substantive analysis under * * * any other" source of law, his claims "simply" ask this Court to address whether the government followed the processes set out in the executive order and its directives. *See California*, 72 F.4th at 318. But such a review "would be tantamount to recognizing a private right to enforce the executive orders, which is foreclosed by the orders as well as by our precedents." *Ibid.*

The absence of any judicially enforceable rights flowing from Executive Order 12,968 is unsurprising because that order is not reviewable under the APA

21

or the Mandamus Act in any event. Executive orders "serve as presidential directives to agency officials to consider certain policies" and "do not create free-standing private rights to enforce such policies because an executive order is not 'law' within the meaning of" the APA. *California*, 72 F.4th at 318. That is because the Executive Branch "simply has no power to make the law; that power rests exclusively with Congress." *U.S. Dep't of Health & Hum. Servs. v. Federal Lab. Rels. Auth.*, 844 F.2d 1087, 1095-1096 (4th Cir. 1988) (en banc) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587-588 (1952)). Executive Order 12,968 exercises the President's "general administrative control," which he possesses "by virtue of the general grant to him of the executive power" by the Constitution, not a specific delegation of authority by Congress. *See Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1339 (4th Cir. 1995) (quotations omitted).

The policy guidance and internal agency regulations likewise are not reviewable under the APA for a variety of reasons, including that neither is "an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *See Arizona v. Biden*, 40 F.4th 375, 387 (6th Cir. 2022) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016)). Both bear "telltale signs * * * of a nonbinding policy statement, not of reviewable agency action." *Id.* at 388. The guidance includes express statements disclaiming any intent to "create or confer any right [or] benefit," *see* ICPG 704.3(D)(5), R. 10-

22

2, Page ID ## 74; AR 7-7(II)(16)(i)(5), R. 10-3, Page ID ## 91, "conditional language that preserves officials' discretion," *Arizona*, 40 F.4th at 387-390; *see* ICPG 704.3(D)(1)(f)-(g), R. 10-2, Page ID ## 74; AR 7-7(II)(16)(i), R. 10-3, Page ID ## 90-92, and "allows officials to make decisions depending on the facts" and "an assessment of the individual and the totality of the facts and circumstances," *Arizona*, 40 F.4th at 388 (quotations omitted); *see* ICPG 704.3(D)(5), R. 10-2, Page ID ## 74; AR 7-7(II)(16)(d), (e)(1)(a), (2)(a), (i)(6), R. 10-2, Page ID ## 81-83, 91-92. For all the same reasons that these internal guidance documents do not confer judicially enforceable rights, they are not subject to judicial review under the APA.

b. These same considerations also foreclose Baugh's attempt to invoke the Mandamus Act. Mandamus is not available unless the petitioner demonstrates a clear right to relief owed by a respondent with a clear duty to act and no adequate alternative remedies are available. Op., R. 34, Page ID ## 264-265; *see Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011). Executive Order 12,968 and the applicable regulations and guidance provide no basis for such an extraordinary claim. For example, although Section 5.2(a)(2) of the executive order provides that disappointed applicants may receive information "upon which a denial or revocation is based," that is only "to the extent the documents would be provided if requested under the [FOIA] (5 U.S.C. 552) or the Privacy Act ([5]

23

U.S.C. 552a)." Exec. Order No. 12,968, § 5.2(a)(2), 60 Fed. Reg. at 40,252. As the district court recognized, "[t]he determination of what information in the investigative file is permitted by national security or FOIA or the Privacy Act to be produced" involves questions that "requires analysis," not mere ministerial action. Op., R. 34, Page ID ## 264-265. Because no applicant has an unqualified right to receive their investigative file, "much less an unredacted" copy of their file, Baugh lacks a cognizable claim for mandamus. *Ibid.*

3. Even if Baugh had some judicially enforceable rights under the Executive Order 12,968 or the regulations implementing that order, he has not plausibly alleged that he is entitled to relief based on those materials. The complaint alleges that Baugh received his investigative file in October 2022, when the government "resent" the investigative file it had provided to him in September 2021, and that he received his investigative file yet again in July 2023. Compl. ¶¶ 24-41, R. 1, Page ID ## 6-9. According to Baugh, the July 2023 disclosure followed months of back-and-forth with "a CIA attorney" about his allegations that the investigative file was "improperly censored," *id.* ¶¶ 36-39, R. 1, Page ID ## 8, and that disclosure included "additional information" that had not previously been provided, *id.* ¶ 40, Page ID ## 9. There can be no serious argument that the government has failed to meet any obligation to produce the file to Baugh.

24

Baugh nonetheless alleges that the government has failed to release information "which is not exempt under FOIA/[the Privacy Act]," Compl. ¶ 52, R. 1, Page ID ## 11, and thus the government must be ordered "to release all requested documentation to him subject to any applicable FOIA/[Privacy Act] exemptions," *id.*, Page ID ## 12. But this ipse dixit assertion is a legal conclusion that need not be credited at the pleading stage. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 680-683 (2009); *Martinez v. Wayne County*, 142 F.4th 828, 843 (6th Cir. 2025) ("While this court must accept the plaintiff's factual allegations as true, it is not required to accept legal conclusions or unwarranted factual inferences as true." (quotations omitted)). Baugh has not identified any requirement in Executive Order 12,968 or the applicable regulations that would compel the disclosure of additional materials and information beyond what the agency has already provided to him.

## B.   Baugh's Remaining Arguments Lack Merit

Baugh's remaining arguments that he should be allowed to pursue claims based on an executive order and agency regulations that expressly disclaim the creation of any judicially enforceable rights fall short. Baugh's arguments fall into two main groups: (1) that "due process" required the district court to ignore the text of the directives and (2) that the court ruled against him due to the government's "misrepresentation." Neither of these arguments has any merit.

1. Baugh first argues (Br. 11-16) that this Court should disregard the explicit language disavowing private judicially enforceable rights because Executive Order 12,968 "is a rule establishing a system of *constitutionally mandated due process*." Baugh Br. 14. This argument fails on multiple grounds.

To start, it is well-established that "no one has a 'right' to a security clearance." *Department of the Navy v. Egan*, 484 U.S. 518, 528 (1988). Baugh does not cite or acknowledge *Egan*, but it is fatal to his assertion of judicially enforceable procedural rights flowing from the denial of his security clearance. Because Baugh has no right to receive a security clearance, he has no constitutionally cognizable interest to which due process procedural requirements could attach. As this Court has explained, "to state a procedural due process claim," a plaintiff "must allege" (*inter alia*) that "he was deprived of a protected liberty or property interest"; a "property interest" "requires that a person have more than a unilateral expectation" of receiving a benefit. *See Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022) (quotations omitted). Baugh's complaint correctly refrained from claiming such an expectation; indeed, the complaint does not identify any constitutional interest, violation, or claim whatsoever. Compl., R. 1, Page ID ## 1-12. It is too late now for him to change course. *See Courser v. Allard*, 969 F.3d 604, 616 (6th Cir. 2020) (argument not made below is forfeited).

26

Baugh's due process argument also fails on its own terms. Baugh claims (Br. 11) that Executive Order 12,968 "put in place a degree of due process which had previously been held" in *Greene v. McElroy*, 360 U.S. 474 (1959), "to be constitutionally required for adverse security clearance determinations." But *Greene*, a case decided long before *Egan*, contains no such holding. In *Greene*, the Supreme Court addressed the question whether "the President or Congress" had delegated to an agency the authority to create "an industrial security clearance program which can operate to injure individuals substantially by denying to them the opportunity to follow chosen private professions" without permitting "cross-examination and confrontation." *Id.* at 499-501, 503. The Court made clear that the question whether these limitations could be imposed "without the most explicit action by the Nation's lawmakers" did not presuppose or imply anything about the Constitution or constitutionally-cognizable interests or processes: the Court explained that its "concern" about "explicit action" applied "even in areas where it is possible that the Constitution presents no inhibition," emphasizing that "[w]hether those procedures under the circumstances comport with the Constitution we do not decide." *Id.* at 508. *Greene* provides no support for Baugh's contention that he is entitled to any particular process, or any particular information or materials, in conjunction with his security clearance denial.

27

Baugh also asserts (Br. 7-10, 14-16) that cases holding that judicial review is not available when an executive order expressly disavows creating any private or enforceable right are wrong because "most of [their] reasoning" misreads the D.C. Circuit's 1965 opinion in *Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451 (D.C. Cir. 1965). That is incorrect. *Gronouski* involved an executive order that directed agencies "to issue appropriate rules and regulations" to provide "a framework for the collective expression by federal employees of their views about the terms and conditions of their employment." *Id.* at 452-453. A postal service employee and a labor organization sued, claiming that the executive order required the government to recognize the organization as the exclusive representative of certain employees. *Id.* at 452. The D.C. Circuit affirmed the district court's dismissal of the claims. The executive order "did not undertake to create any role for the judiciary in the implementation of [its] policy," the Court explained. *Id.* at 456. "Congress has given the District Court many important functions to perform, but they do not include policing the faithful execution of Presidential policies by Presidential appointees." *Id.* at 457. Nothing in *Gronouski* calls into question decades of directly applicable precedent holding that judicial review is not available when an executive order expressly disavows creating any judicially enforceable rights.

28

2. In the alternative, Baugh argues that the district court "based its entire ruling" on the premise that the executive order, policy guidance, and internal agency regulations "all 'specifically state that they are intended solely for internal management and do not create any enforceable rights.'" Baugh Br. 4-7 (quoting Op., R. 34, Page ID ## 263). Because only the executive order expressly refers to internal management (the policy guidance and internal agency regulations do not), Baugh asserts that the court erroneously relied on "misrepresentation[s]" by the government in district court. Baugh Br. 5 n.1. Baugh offers no support for this accusation, much less explains why, "on this fact alone," Baugh Br. 5, he is entitled to an order from this Court giving him access to the redacted material. There is no dispute that the executive order explains that it "is intended only to improve the internal management of the executive branch." Exec. Order No. 12,968, § 7.2(e), 60 Fed. Reg. at 40,254. The policy guidance and the internal agency regulations were issued by executive subcomponents that lack management authority over the branch writ large. There is thus nothing surprising, or problematic, about the fact that subcomponent directives do not refer to "internal management of the executive branch." *Ibid.*

Finally, Baugh's reliance (Br. 6-7) on *Lorillard, Inc. v. U.S. Food & Drug Administration*, 56 F. Supp. 3d 37 (D.D.C. 2014), does nothing to advance his arguments that Executive Order 12,968 and various agency regulations give him

29

judicially enforceable rights to an unredacted version of his investigative file. *Lorillard* provides no support for Baugh's extraordinary theory that internal guidance and agency regulations create a private right of action unless they expressly state that their procedural requirements are intended solely for the "internal management" of the agency, much less that the absence of the words "internal management" can override the presence of other language explicitly disavowing the creation of any judicially enforceable right. In *Lorillard*, the district court emphasized that the relevant executive order lacked any statement that it was "*intended only to improve the internal management of the executive branch*," *id.* at 50-51 (quotations omitted) (emphasis in original), but that exact statement appears in the executive order at issue here. Exec. Order No. 12,968 § 7.2(e), 60 Fed. Reg. at 40,254. In any event, *Lorillard* is a district court decision from outside this Circuit that the D.C. Circuit itself vacated on appeal. *See R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 810 F.3d 827 (D.C. Cir. 2016).

## C.    The District Court Did Not Abuse Its Discretion by Dismissing the Complaint Without "Jurisdictional" Discovery

Baugh also briefly argues (Br. 25-27) that the district court abused its discretion by denying his request for "jurisdictional" discovery about whether the CIA (as opposed to a different federal entity) denied his security clearance application. That argument lacks merit.

30

As the government explained in district court, discovery is unnecessary to resolve this case. Baugh's complaint invokes federal question jurisdiction, Compl. ¶ 1, R. 1, Page ID ## 1; *see* 28 U.S.C. § 1331, and the government moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, not for lack of subject-matter jurisdiction under Rule 12(b)(1) or personal jurisdiction under Rule 12(b)(2), Mot. to Dismiss, R. 10, Page ID ## 43-69. Nothing about the resolution of the motion to dismiss turned on the identity of the federal entity that denied Baugh's application: his claims are predicated on arguments about Executive Order 12,968, which applies by its terms to "any 'Executive agency,' as defined in 5 U.S.C. 105," and "any other entity within the executive branch that comes into the possession of classified information." Exec. Order No. 12,968, § 1.1, 60 Fed. Reg. at 40,245. Baugh also offers no reason to believe that the identity of the entity that denied his security clearance would matter to the outcome in his case: as the government's letter explained, his application for TS/SCI clearance was denied "based on the Security Executive Agent Directive 4, National Security Adjudicative Guidelines for Drug Involvement and Substance Misuse." Addendum to Mot. to Dismiss Ex. 3, R. 23-1, Page ID ## 155. The court thus correctly denied Baugh's request for jurisdictional discovery because it would serve no purpose. Op., R. 34, Page ID ## 268.

31

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

JEROME F. GORGON, JR.
  *United States Attorney*

CHARLES W. SCARBOROUGH

*s/    Sonia Carson*

SONIA CARSON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7241*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 616-8209*
  *sonia.m.carson@usdoj.gov*

MARCH 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,341 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*s/ Sonia Carson*

Sonia Carson

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Sonia Carson*

Sonia Carson

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the government designates the

following district court documents as relevant:

| Record Entry | Description | Page ID # Range |
|---|---|---|
| RE 1 | Complaint | 1-12 |
| RE 10-2 | Motion to Dismiss, Exhibit 1 – Intelligence Community Policy Guidance No. 704.3: Denial or Revocation of Access to Sensitive Compartmented Information, Other Controlled Access Program Information and Appeals Process | 73-75 |
| RE 10-3 | Motion to Dismiss, Exhibit 2 – AR 7-7: Appeal of Personnel Security Decisions | 77-92 |
| RE 10-5 | Motion to Dismiss Exhibit 4 – Security Decision Information and Instructions | 95-99 |
| RE 10-5 | Motion to Dismiss Exhibit 4 – Security Executive Agent Directive 4 Guideline H - National Security Adjudicative Guidelines for Drug Involvement and Substance Abuse | 100-101 |
| RE 10-6 | Motion to Dismiss Exhibit 5 – September 3, 2019 Letter to Kel McClanahan | 102-103 |
| RE 10-6 | Motion to Dismiss Exhibit 6 – December 20, 2023, Letter to Kel McClanahan | 104-105 |

| RE 23 | Addendum to Motion to Dismiss | 155 |
|-------|-------------------------------|-----|
| RE 24 | Corrected Order re 15 Order on Motion to Seal (May 21, 2024) | 156 |
| RE 30 | Opinion (Feb. 13, 2025) | 257-268 |