No. 25-1332

[ORAL ARGUMENT NOT YET SCHEDULED]

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

RYAN BAUGH,

*Plaintiff-Appellant*,

v.

CENTRAL INTELLIGENCE AGENCY,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
No. 2:24-cv-10036 (Susan K. DeClercq, J.)

_____

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

ARGUMENT ...................................................................................................... 1

    I.     *MICHIGAN V. THOMAS* SHOULD NOT BE FOLLOWED ..... 1

    II.    APPLICATION OF *MICHIGAN V. THOMAS* TO AGENCY RULES IS UNWARRANTED ...................................................... 2

    III.   CIA'S CLAIMS REGARDING THE RELEASE OF INFORMATION ARE MERITLESS .......................................... 4

    IV.   BAUGH HAS A FIFTH AMENDMENT LIBERTY INTEREST ............................................................................... 7

    V.    CIA MISREPRESENTED THE FACTS THEN AND NOW..... 10

    VI.   THE DISTRICT COURT SHOULD HAVE ALLOWED JURISDICTIONAL DISCOVERY ............................................. 12

CONCLUSION .................................................................................................. 14

CERTIFICATE OF COMPLIANCE .................................................................. 15

CERTIFICATE OF SERVICE .......................................................................... 15

ADDENDUM ..................................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                                      **Pages**

*Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459 (6th Cir. 2009) ......... ......... .......... ......... ......... ......... ......... ......... 13

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) ....... ......... .......... ......... ......... 13

*California v. EPA*, 72 F.4th 308 (D.C. Cir. 2023)... ......... ......... ......... ......... 2

*Coyne v. Nat'l Guard Bureau, DOD*, No. 25-5539, 2026 U.S. Dist. LEXIS 76997 (E.D. Pa. Apr. 9, 2026).. .......... ......... .......... ......... ......... 5

*Dellums v. Nuclear Regulatory Comm'n*, 863 F.2d 968 (D.C. Cir. 1988). ....... 2

*Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) ..... ......... .......... ......... ......... 8

*\*Greene v. McElroy*, 360 U.S. 474 (1959) .... ......... ......... .......... ......... ......... 9

*Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437 (6th Cir. 2022) ........ 8

*Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694 (1982)......... .......... ......... ......... ......... ......... ......... ......... ......... ......... 11

*Joelson v. United States*, 86 F.3d 1413 (6th Cir. 1996)..... .......... ......... ......... 9

*Kartseva v. Dep't of State*, 37 F.3d 1524 (D.C. Cir. 1994) .......... ......... ......... 9

*\*Lorillard, Inc. v. FDA*, 56 F. Supp. 3d 37 (D.D.C. 2014) .......... ......... ......... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........ .......... ......... ......... 13

*Lumaj v. Gonzales*, 462 F.3d 574 (6th Cir. 2006) ... ......... .......... ......... ......... 10

*Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451 (D.C. Cir. 1965) ......... .......... ......... ......... ......... ......... ......... ......... ......... ......... 1

*Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986) ......... .......... ......... ......... 1

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006)... ......... ......... 14

*Moyar v. DOD*, No. 23-5085, 2024 U.S. App. LEXIS 13146 (D.C. Cir. May 31, 2024)....... ......... ......... .......... ......... ......... .......... ......... ......... 3

*\*Nat'l Ass'n of Gov't Emps. v. White*, 418 F.2d 1126 (D.C. Cir. 1969)  ......... 1

*Proctor v. Krzanowski*, 820 Fed. App'x 436 (6th Cir. 2020)....... ......... ......... 9

*Savada v. DOD*, 755 F. Supp. 6 (D.D.C. 1991)....... ......... .......... ......... ......... 5, 6

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ........ ......... ......... 14

*Thompson v. Parkes*, 963 F.2d 885 (6th Cir. 1992). ......... .......... ......... ......... 10

*United States v. Marks*, 209 F.3d 577 (6th Cir. 2000)....... .......... ......... ......... 10

## ARGUMENT

Appellant Ryan Baugh ("Baugh") seeks reversal of the District Court's rulings in favor of Appellee Central Intelligence Agency ("CIA") identified in his Opening Brief, Dkt. #25. Baugh will focus this Reply on briefly addressing the most problematic issues with CIA's arguments, none of which effectively refute any of Baugh's contentions, in roughly the order in which they are presented in CIA's Brief, Dkt. #27.[1]

## I.    *MICHIGAN V. THOMAS* SHOULD NOT BE FOLLOWED

Baugh stands behind his lengthy analysis of *Michigan v. Thomas* and will only briefly return to that well. Put simply, Baugh clearly demonstrated that this Court's decision in *Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986), was directly based on a since-rejected interpretation of *Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451 (D.C. Cir. 1965). Most relevantly, Baugh pointed out that the D.C. Circuit explained four years later that *Gronouski* did not apply in cases where constitutional rights were allegedly being violated. *Nat'l Ass'n of Gov't Emps. v. White*, 418 F.2d 1126, 1129-30 (D.C. Cir. 1969).

---

[1] Baugh's decision to follow the course of CIA's Brief should not be interpreted as a concession that CIA has properly framed the issues, or even that the issues discussed by CIA are properly before the Court; it is solely to assist the Court in matching CIA's arguments with Baugh's counterarguments. Similarly, Baugh has elected not to repeat himself unnecessarily, so if he does not address an argument or a claim raised by CIA herein, that is simply an indication that he stands behind the corresponding countervailing statement in his Brief.

Moreover, even to the extent that *Michigan v. Thomas* was well-reasoned, it was very much a product of its time, and the small exception that this Court and other courts believed that they were creating has been grossly abused in the intervening years, such that practically every Executive Order issued by the White House now includes the purportedly magic judicial-review-stripping words *as boilerplate language.* For those reasons, this Court should not consider itself bound by the three-line treatment of the question in *Michigan v. Thomas*,[2] or, if it still views *Michigan v. Thomas* to be controlling, it should limit it to its facts or reverse it outright, even if that requires review *en banc* to do so.

## II.     APPLICATION OF *MICHIGAN V. THOMAS* TO AGENCY RULES IS UNWARRANTED

However, even if this Court accepts and follows *Michigan v. Thomas* completely, that only addresses Baugh's reliance on Executive Order 12,968 itself; it does not resolve the matter of the implementing regulations. CIA prominently cites *California v. EPA*, 72 F.4th 308 (D.C. Cir. 2023), for the idea that a court cannot review an agency's failure to follow its own regulations if those regulations are implementing an Executive Order that the court cannot review compliance

---

[2] The D.C. Circuit has recognized that when the reasoning of prior circuit precedent has been "eviscerated" by later developments, including subsequent panel opinions "inconsistent" with its reasoning, those prior cases are no longer binding precedent and need not be formally reversed by the full court sitting *en banc*. *Dellums v. Nuclear Regulatory Comm'n*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988).

with. This argument fails for many reasons, of which Baugh will briefly address the three most applicable examples.

First, as Baugh explained in his Brief, *California v. EPA* relies on *Gronouski* just as much as *Michigan v. Thomas*, and therefore is just as suspect. Second, the D.C. Circuit implicitly rejected this exact reading of *California v. EPA* a year later in a case which is almost directly comparable to this case (and which is prominently cited by CIA): "We do not prejudge the question whether this 'right' [to request records] extends to the decisions under review or, if it does, whether it is enforceable through the APA or mandamus." *Moyar v. DOD*, No. 23-5085, 2024 U.S. App. LEXIS 13146, at *10-11 (D.C. Cir. May 31, 2024). If *California v. EPA* meant what CIA argues it meant, the D.C. Circuit would have been bound to follow it and affirm the district court's opinion fully, because there would be no way that the plaintiff could have argued that agency compliance with regulations implementing Executive Order 12,968 were reviewable if the Order itself were not.

Lastly, CIA argues that "[t]he absence of any judicially enforceable rights flowing from Executive Order 12,968 is unsurprising because that order is not reviewable under the APA or the Mandamus Act under any event." (Br. for Def,-Appellee, Dkt. #27, at 21-22 (filed Mar. 19, 2026) [hereinafter CIA's Br.].) When one considers CIA's argument that *no* Executive Order contains judicially enforceable rights if it says it does not, coupled with the fact that practically *all*

3

modern Executive Orders contain boilerplate language purporting to prohibit judicial review, it becomes obvious that the Government's position is that *no* regulation which implements *any* Executive Order may be judicially enforced. Put another way, this is an attempt to broadly allow agencies to violate their own regulations with impunity as long as they claim that the regulations were implementing an Executive Order. This Court should not endorse CIA's attempt to blow a hole in the presumption of judicial review.

## III.   CIA'S CLAIMS REGARDING THE RELEASE OF INFORMATION ARE MERITLESS

CIA makes three related contentions which do not hold up to even the most basic scrutiny. First, it argues that the requirement in Executive Order 12,968 that agencies must provide applicants with the investigative file to the extent the documents would be provided if requested under the Freedom of Information Act ("FOIA") or the Privacy Act is "not mere ministerial action" because it "requires analysis." (*Id*. at 23-24.) However, this misrepresents the nature of the action in question. The ministerial action is *applying FOIA and the Privacy Act*, which CIA did not do. Had it applied FOIA and the Privacy Act, it would not have redacted Baugh's own information, which is not allowed under either statute, nor would it have redacted an investigator's recommendations, apparently believing that they were covered by the deliberative process privilege, which is not allowed under the Privacy Act. Instead, CIA redacted the records on unclear grounds which were

4

untethered to FOIA and the Privacy Act. *That* is the ministerial action CIA refused to take, and this Court should hold that CIA must release the investigative file to Baugh after *only redacting information in accordance with FOIA and the Privacy Act.*

This argument ties into the second related claim made later by CIA: "Baugh has not identified any requirement in Executive Order 12,968 or the applicable regulations that would compel the disclosure of additional materials and information beyond what the agency has already provided to him." (*Id.* at 25.) While, as noted above, the requirement in Executive Order 12,968 and the implementing regulations is that CIA *apply FOIA and the Privacy Act*, it is *those statutes* which would "compel the disclosure of additional materials and information."

First, it is well-established that an agency may only withhold information from a request made under both FOIA and the Privacy Act if it is exempt under *both* statutes. *See, e.g., Savada v. DOD*, 755 F. Supp. 6, 9 (D.D.C. 1991). "If a FOIA exemption applies to a document, but a Privacy Act exemption does not, the document must be released under the Privacy Act and if a Privacy Act exemption applies but a FOIA exemption does not, the document must be released under FOIA." *Coyne v. Nat'l Guard Bureau, DOD*, No. 25-5539, 2026 U.S. Dist. LEXIS 76997, at *25 (E.D. Pa. Apr. 9, 2026).

5

Second, "although the deliberative process privilege exempts [certain information] from release under FOIA, the privilege does not exempt the [information] from release under the Privacy Act." *Savada*, 755 F. Supp. at 9. Thus, if CIA withheld information under a claim that it was protected by the deliberative process privilege, as the record seems to indicate, it was not applying both FOIA and the Privacy Act as required by Executive Order 12,968 and the implementing regulations. Similarly, if it withheld information about Baugh *from* Baugh, it was not applying *either* statute, but was instead treating Baugh as a third-party FOIA requester, if it applied FOIA at all.[3]

When CIA's response demonstrates a flagrant lack of even the most basic application of FOIA and the Privacy Act to the investigative file in question, it cannot claim that the required action "requires analysis." Under CIA's interpretation of this distinction, if an agency promulgated a regulation which required it to release records in chronological order, a person could not judicially enforce that requirement if an agency were to release a disorganized pile of papers

---

[3] Contrary to CIA's contention, this does not mean that "FOIA and the Privacy Act clearly provide an alternate adequate remedy in court for the unredacted documents he seeks." (CIA's Br. at 15 (cleaned up).) Baugh does not dispute that he *could* have filed FOIA and Privacy Act requests and then litigated them, but that would not have been adequate to resolve his present difficulty because CIA would not have waited for that litigation to conclude before forcing him to prosecute his appeal. *See* Complaint, R. 1, Page ID # 9 ("If we do not receive a response within 10 business days, your client's request for a /review [sic] will be cancelled.").

6

to them, because putting the documents in chronological order—or even page order—would "require analysis." An agency either processes an investigative file under FOIA and the Privacy Act or it does not. CIA did not, and by refusing to do so it failed to perform a ministerial action.

Between those two arguments, CIA makes the weakest argument in its brief. It argues that Baugh is not entitled to relief because he received a redacted file in October 2022 and received a less redacted file in July 2023. (CIA's Br. at 24.) In other words, CIA is arguing that the Executive Order and its implementing regulations only entitle a person to receive *an* investigative file, not a *complete* investigative file. If CIA were to respond to a request for an investigative file with twenty fully redacted pages and freely admit that it did not apply FOIA or the Privacy Act, it would argue that it still satisfied the requirement that it provide *an* investigative file, notwithstanding the requirement that it do so "to the extent the documents would be provided if requested under [FOIA] . . . or the Privacy Act." Exec. Order 12,968 § 5.2(a)(2). This is a frivolous argument and cannot be seriously entertained.

## IV.    BAUGH HAS A FIFTH AMENDMENT LIBERTY INTEREST

Despite correctly stating that "Baugh's suit does not challenge the decision to deny his application for a TS/SCI security clearance" (CIA's Br. at 12) and then stating that "it is well-established that 'no one has a 'right' to a security clearance'"

7

(*id.* at 26 (quoting *Dep't of the Navy v. Egan*, 484 U.S. 518, 528 (1988)), CIA then makes a completely unsupported logical leap: "Because Baugh has no right to receive a security clearance, he has no constitutionally cognizable interest to which due process procedural requirements could attach." (*Id.*) This argument fundamentally misrepresents the extensive case law on this matter.

CIA states that this Court has held that a plaintiff with a procedural due process claim must allege that "he was deprived of a protected liberty or property interest," adding that a property interest "requires that a person have more than a unilateral expectation" of receiving a benefit. *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022). It then states, "Baugh's complaint correctly refrained from claiming such an expectation." (CIA's Br. at 26.) CIA is correct that Baugh did not—and cannot—claim that he was deprived of a property right by CIA's actions. He was, however, deprived of a *liberty* interest in the appropriate procedural due process. CIA, however, after conceding that this Court has explicitly recognized procedural due process claims based on liberty interests, *never mentions liberty interests again*.[4]

---

[4] CIA does inexplicably claim that "the complaint does not identify any constitutional interest, violation, or claim whatsoever" (*id.*), which is refuted by the fact that the Complaint mentions "due process" three separate times. Complaint, R. 1, Page ID ## 2, 4. CIA even admitted below that "characterizing the provisions in Section 5.2(a) of Executive Order 12,968 as 'due process provisions'" was "a constitutional claim." Reply for Dismissal, R. 32, Page ID # 247. To the extent that CIA's objection is that Baugh did not explicitly add "constitutional" before "due

8

Despite CIA's attempt to distinguish *Greene v. McElroy*, 360 U.S. 474 (1959), that case clearly established that an applicant for a security clearance has a liberty interest in the appropriate due process. Beyond the fact that the D.C. Circuit has held that a liberty interest is implicated where government action excludes an individual from employment opportunities or prevents pursuit of a chosen profession, *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527-28 (D.C. Cir. 1994), this Court also recognizes liberty interests in pursuing one's chosen profession. *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996).

However, the fatal flaw in CIA's argument is that *this Court* held *just six years ago* that *Greene* meant exactly what Baugh said it meant. "*Greene* found that the plaintiff's liberty interest was infringed when his security clearance was revoked, causing him to lose his current job and rendering him unlikely to find future employment." *Proctor v. Krzanowski*, 820 Fed. App'x 436, 439 (6th Cir. 2020) (citing 360 U.S. at 495). This means that, not only is CIA's complaint that *Greene* was "decided long before *Egan*" (CIA's Br. at 27) completely irrelevant, but its counsel "failed to comply with [their] well-defined duty to 'disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing

---

process" in his Complaint, that is a minor quibble and not sufficient grounds to dismiss a case.

counsel.'" *Lumaj v. Gonzales*, 462 F.3d 574, 576 n.1 (6th Cir. 2006) (quoting Model R. Prof. Conduct 3.3); *see also United States v. Marks*, 209 F.3d 577, 585 (6th Cir. 2000) (citing Rule 3.3 as applicable in this Court); *Thompson v. Parkes*, 963 F.2d 885, 888 n.1 (6th Cir. 1992) (same).

In short, while it is well-understood that an applicant for a security clearance possesses a constitutional liberty interest in the proper procedural due process, CIA still attempts to create the illusion of uncertainty where there is none, and in doing so both misrepresents the case law and fails to obey one of the cardinal tenets of federal litigation. Its assertion that "*Greene* provides no support for Baugh's contention that he is entitled to any particular process" (CIA's Br. at 27) is both baseless and disingenuous and should be soundly rejected.

## V.    CIA MISREPRESENTED THE FACTS THEN AND NOW

Baugh demonstrated that CIA misrepresented the facts to the District Court when it stated, "Baugh's attempt to state a claim for alleged violations of ICPG 704.3 and AR 7-7 suffers the same flaw as his attempt to state a claim for violation of Executive Order 12,968 because they also specifically state that they are intended solely for internal management and do not create any enforceable rights." Memo to Dismiss, R. 10, Page ID # 64. Intelligence Community Policy Guidance ("ICPG") 704.3 states that it does not create or confer any rights, but it includes no mention of "internal management." ICPG 704.3, R. 10-2, Page ID # 74. Agency

10

Regulation ("AR") 7-7 follows the same pattern, disclaiming the creation of rights while remaining silent about the alleged intention behind the rule. AR 7-7, R. 10-3, Page ID # 91.

In an attempt to salvage its misrepresentation, CIA exacerbates it instead, first by misrepresenting Baugh's argument and then by misrepresenting the facts from the key case he cited. First, it argues that "[t]here is . . . nothing surprising, or problematic, about the fact that subcomponent directives do not refer to 'internal management of the executive branch'" because those "executive subcomponents lack management authority over the branch writ large." (CIA's Br. at 29.) While there may be nothing surprising about agency regulations not referring to internal management of the Executive Branch writ large, *that is not what Baugh argued.* Baugh pointed out that these regulations did not reference internal management *at all*. This failure to reference *any* internal management purpose weighs heavily against CIA.

Moreover, when CIA attempts to argue that the key case on point does not apply, it even misrepresents the finding of that case. CIA states that *Lorillard, Inc. v. FDA*, 56 F. Supp. 3d 37 (D.D.C. 2014), does not apply because "the district court emphasized that the relevant executive order lacked any statement that it was '*intended only to improve the internal management of the executive branch*[,]' but that exact statement appears in the executive order at issue here." (CIA's Br. at 30

11

(citations omitted).) As Baugh clearly stated in his Brief, including a lengthy block quote from *Lorillard*, the relevant finding in that case did not involve an Executive Order; it involved an Office of Government Ethics *regulation*, 5 C.F.R. § 2635.106(c). Furthermore, the Office of Government Ethics has the same authority to set government-wide ethics policy as the Director of National Intelligence has to set government-wide security clearance policy.[5] *Lorillard* is squarely on all fours with this case, and CIA's misrepresentations to the contrary speak volumes.[6]

## VI.    THE DISTRICT COURT SHOULD HAVE ALLOWED JURISDICTIONAL DISCOVERY

CIA argues that the District Court did not err by denying Baugh's motion for jurisdictional discovery because "[n]othing about the resolution of the motion to dismiss turned on the identity of the federal entity that denied Baugh's application: his claims are predicated on arguments about Executive Order 12,968." (*Id.*) This is wrong for two reasons. First, as Baugh has consistently noted, his claims are

---

[5] The Director of National Intelligence, as the Security Executive Agent, sets security clearance policy for all relevant components of the Executive Branch writ large, and did so by promulgating ICPG 704.3. ICPG 704.3, R. 10-2, Page ID # 73. CIA also misrepresented this fact, despite the fact that the District Court explicitly cited it. Opinion, R. 34, Page ID # 258 (stating "the Executive Order *and relevant guidance* pertain to all agencies that are part of the 'intelligence community'") (emphasis added).

[6] It is also telling that CIA points out that *Lorillard* was vacated by the D.C. Circuit (CIA's Br. at 30) without indicating that the vacatur was on other grounds and that the D.C. Circuit made no mention of the relevant part of the district court's holding.

very much *not* predicated solely on arguments about Executive Order 12,968, and it is disingenuous for CIA to say that they are. As CIA has argued, AR 7-7 does not apply to any agency besides CIA, and therefore it is critically important for Baugh and the Court to know if CIA denied his application for a security clearance. If CIA is the proper Defendant, then Baugh's reliance on AR 7-7 means that this case cannot be dismissed yet. If CIA is *not* the proper Defendant, then Baugh is entitled to know the agency that *is* so that he can amend his Complaint to rely on any other applicable agency regulations. Either way, identification of the proper Defendant is necessary.

Second, and most fundamentally, federal courts must assure themselves of subject-matter jurisdiction before proceeding, and this includes confirming that the defendant is the proper party defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that Article III standing requires injury fairly traceable to the defendant). This obligation is mandatory and cannot be waived by the parties, and failure to comply is reversible error. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (holding that subject-matter jurisdiction can never be forfeited or waived and courts must consider it *sua sponte*). *See also Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 702 (1982) (holding that parties cannot confer subject-matter jurisdiction by consent); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)

13

(recognizing that federal courts have a duty to consider subject-matter jurisdiction *sua sponte*).

Additionally, a court must resolve questions of subject-matter jurisdiction before addressing the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding that a court must resolve jurisdiction before addressing the merits); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006) (same). And this is a continuing obligation. *See McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006) (recognizing an independent obligation to examine jurisdiction). In other words, once CIA raised the possibility that it might not be the proper Defendant, Memo to Dismiss, R. 10, Page ID # 55, the District Court had no choice but to resolve that issue before doing *anything else*, and this Court has an equal obligation to assure itself of subject-matter jurisdiction before reaching the merits of this appeal.

## <u>CONCLUSION</u>

For the foregoing reasons and those discussed in Baugh's Opening Brief, the District Court's opinion should be reversed and remanded.

Date:  April 17, 2026

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing filing contains 3,712 words and was prepared in 14-point Times New Roman font using Microsoft Word 365.

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2026, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail on Appellee's counsel of record.

Date: April 17, 2026

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.

15

## **ADDENDUM**

The list of relevant originating court documents is as follows:

- Complaint, R. 1, Page ID ## 1-12

- Memo to Dismiss, R. 10, Page ID ## 43-70

- ICPG 704.3, R. 10-2, Page ID ## 72-75

- AR 7-7, R. 10-3, Page ID ## 76-92

- Reply for Dismissal, R. 32, Page ID ## 239-254

- Opinion, R. 34, Page ID ## 257-268